PINE HILL COAL COMPANY, INC. *v.* UNITED STATES.

APPEAL FROM THE COURT OF CLAIMS.

No. 101.    Argued January 20, 1922.—Decided May 29, 1922.

1. Section 25 of the "Lever Act" of August 10, 1917, c. 53, 40 Stat. 284, authorized the fixing of all prices of coal and the regulation of its distribution among dealers and consumers during the war, and the taking over by the President, for just compensation, of plants and businesses of producers and dealers who neglected to conform to such prices or regulations, and further provided that "if the prices so fixed," or the compensation as determined under the act in case of requisition, were not satisfactory to the persons entitled to receive them, they should be paid seventy-five per centum "of the amount so determined" and be "entitled to sue the United States to recover such further sum as, added to said seventy-five per centum, will make up such amount as will be just compensation". *Held,* that the prices last referred to are only those to be paid by the Government, and that the act cannot be construed as an undertaking by the United States to indemnify producers who sold to third parties where the prices fixed were unjust and unreasonable.    P. 195.

2. A construction of a statute which would make the Government liable, in great sums, for losses resulting to individuals from obedience to its regulations, cannot be based upon the vicissitudes attending the passage of the bill nor be adopted unless expressed in the plainest language.    P. 196.

55 Ct. Clms. 433, affirmed.

APPEAL from a judgment sustaining a demurrer to a petition setting up a claim to indemnity for losses resulting from sales of coal at prices fixed by the Government.

*Mr. Henry S. Drinker, Jr.,* with whom *Mr. Thomas Reath, Jr., Mr. Percy C. Madeira, Jr., Mr. Douglas M. Moffat* and *Mr. William A. Glasgow, Jr.,* were on the brief, for appellant.

The purpose of the act was to stimulate maximum production.

Congress was face to face with a serious problem concerning fuel regulation, and that problem must be understood and appreciated before the solution provided in the Lever Act can be properly construed. If prices were fixed too high, the householder and manufacturer would have been justly aroused, and the public would have had to bear an unnecessary increase in the then rapidly mounting cost of the war. If prices were fixed too low, there was the probability either that the high cost operators would be forced to close their coal mines, thus endangering the supply of coal for war purposes, or else that they might apply to the courts to enjoin the low prices as confiscatory, and before the matter could have been finally settled the war would have been over and the whole purpose of regulation unaccomplished.

An additional difficulty in the fixing of fair prices was the fact that the cost of mining necessarily varied not only as between different regions, but as between different operators in the same locality, and what might be a fair price for one would not be for another.

The best solution of this problem obviously was for the Government to fix the price of coal at an average figure low enough to stimulate its use in manufacture, and at the same time to guarantee to any particular producer of coal who was required to sell his product at the fixed price, that, if the latter were not sufficient to cover his actual cost of production plus a fair profit, the United States would make up the difference.

It is, we submit, exactly the solution which Congress intended to adopt and did in fact adopt in § 25 of the Lever Act.

Our position may be summarized as follows:

(1) It is entirely reasonable to suppose that Congress would have intended to prevent interference with a wartime regulation of prices by making a guaranty to those for whom the prices fixed were not fair.

(2) From the wording of par. 4, § 25, of the Lever Act, it is plain that some remedy was intended to be given to the seller on sales made to others than the United States because: the words " prices so fixed " in par. 4 refer to the precedent authority in par. 1 to fix prices on sales other than to the United States; and these words cannot refer to the fixing of prices on sales to the United States authorized in the subsequent par. 6, because the remedy for the abuse of the authority in par. 6 is fully and completely covered by the subsequent par. 8, which refers explicitly to par. 6.

(3) Since some remedy was intended to be given the seller on sales between producer and consumer, and since it would be absurd to suppose that Congress intended to make up the difference between 75% of the price fixed and a reasonable price, the only possible conclusion is that the producer was to receive the whole of the price from his purchaser, and have a right to sue the United States for the difference between that and a reasonable price.

(4) An examination of this provision as it passed the Senate shows conclusively that such a right was then given, and the report of the conference committee shows that the only change intended to be made by the committee in this provision concerned sales to the United States and that no change was contemplated as applied to sales from producer to consumer.

(5) The wording is obscure as it stands, and cannot be made entirely clear without either eliminating or inserting certain words. The construction for which we contend does less violence to the structure of the paragraph, and is more consistent with the other portions of the section and with the general intent of Congress than any other possible construction.

*Mr. Assistant Attorney General Riter,* with whom *Mr. Solicitor General Beck* and *Mr. Charles S. Lawrence* were on the brief, for the United States.

Mr. Justice Holmes delivered the opinion of the court.

This case like *Morrisdale Coal Co. v. United States, ante,* 188, is a claim based upon the action of the Fuel Administration under the Act of August 10, 1917, c. 53, § 25, 40 Stat. 276, 284, fixing prices for coal. The allegations and arguments however are different. The transactions of the claimant from and including September, 1917, through January, 1919, are set forth in detail. They embrace large sales at government prices and smaller sales at other than those prices. It is alleged that the prices fixed for the claimant's coal were unjust and unreasonable and did not afford just compensation, and that as a result of keeping to them, as the claimant did, the receipts were actually less than the cost of production. On these facts the petition sets up a contract of indemnity on the part of the United States arising out of the language to be quoted from § 25. It was dismissed on demurrer by the Court of Claims.

The paragraph of § 25 that is relied upon follows paragraphs giving authority to the President personally or through the Federal Trade Commission to fix the price of coal and coke, to regulate the method of distribution among dealers and consumers during the war, and if a producer or dealer neglects to conform to such prices or regulations &c., to take over the plant and business, paying a just compensation. The paragraph in question reads: " That if the prices so fixed, or if, in the case of the taking over or requisitioning of the mines or business of any such producer or dealer the compensation therefor as determined by the provisions of this Act be not satisfactory to the person or persons entitled to receive the same, such person shall be paid seventy-five per centum of the amount so

determined, and shall be entitled to sue the United States
to recover such further sum as, added to said seventy-five
per centum, will make up such amount as will be just
compensation in the manner provided by section twenty-
four, paragraph twenty, and section one hundred and
forty-five of the Judicial Code." The latter section of the
Judicial Code is the one that gives jurisdiction to the
Court of Claims and the former that which gives a limited
concurrent jurisdiction to the District Courts.

It is obvious that the words as they stand cannot be
applied to sales by producers to third persons; for it would
be absurd to suppose that the United States undertook to
pay not only such additional sum as might be awarded but
also the last twenty-five per centum of the price as fixed,
leaving the buyer to retain that amount. The claimant
admits this, but insists that however read the paragraph
cannot be followed without correction. It argues that
the opening words, " if the prices so fixed ", necessarily
apply to prices in general as fixed by the power just given
in the section. Therefore, it says, there should be inter-
polated in the provision that the seller shall be paid sev-
enty-five per centum the words " the prices so fixed or ";
and in like manner that the provision for recovery should
read that he shall recover such sum as added to " the said
prices or " said seventy-five per centum will be just. It
points out that while seeking to stimulate production in
aid of the war the Government could not fix very high
prices without arousing householders and manufacturers,
or very low ones without endangering the supply and in-
curring the charge of confiscation. It is said that the nat-
ural way out of the difficulty was for the Government to
guarantee a just return, and that by so doing it avoided
doubts as to the constitutionality of the statute. There is
offered a critical and refined scrutiny of the history of the
amendment that introduced the claim. The argument is
that the section that became § 25, when originally offered

as an amendment, clearly provided for payment in all cases, that a modification was introduced for payment of only seventy-five per centum upon takings by the United States, but that it was not intended to change the general scope of the relief. Other makeweights are thrown in to which we think it unnecessary to advert.

It is a delicate business to base speculations about the purposes or construction of a statute upon the vicissitudes of its passage. Here we have as against the arguments of the claimant the fundamental and necessarily governing consideration that rightly prevailed below. A liability in any case is not to be imposed upon a government without clear words. But liability for a regulation, for the consequences of a law, on the part of the legislating power, is most unusual, and where, as here, the liability would mount to great sums, only the plainest language could warrant a court in taking it to be imposed. The general words " the prices so fixed " taken by themselves no doubt would include prices to private purchasers, but the specific provision as to paying seventy-five per centum prevails over them on the usual principles of construction and excludes a reference to any prices except those paid by the Government. It is said that those prices are provided for elsewhere, but the claimant's argument presses the consideration that the law had to be hastily passed, and unnecessary reduplication is far more easy to admit than an enormous charge upon the United States that can be fastened upon it only by inserting into a statute words that are not there.

*Judgment affirmed.*