Hat, Judge,
delivered the opinion of the court:
This is a suit brought by the Brooks-Scanlon Corporation against the United States to recover the sum of $1,275,923.07, and claim is also made for interest on that amount at 6 per cent per annum from February 24,1920, to date of judgment.
On March 28,1916, a contract in writing was entered into between the New York Shipbuilding Corporation and the East Coast Transportation Co., whereby the shipbuilding company agreed to build in its yard at Camden, N. J., a certain steamship of about 8,100 tons d. w. t. according to plans, specifications, and conditions described, and the East Coast Transportation Co. agreed to pay the sum of $595,000 to the shipbuilding company in 'certain installments set forth in the contract. The ship was to be delivered to the East Coast Transportation Co. on or before February 1, *291 1918. Between July 5, 1916, and May 25, 1917, changes in the construction of the ship were agreed to increasing the d. w. t. to 8,597 tons and the price for said ship to $811,130.
On May 24, 1917, the East Coast Transportation Co., by instrument in writing, assigned and transferred all its right, title, and interest in and to the contract above referred to to the Carpenter-O’Brien Corporation, owner of all the stock of the East Coast Transportation Co., and the latter company was thereafter dissolved.
On October 20, 1917, Scanlon and his associates acquired an interest in the Carpenter-O’Brien Corporation, and on. December 8, 1917, the name of the Carpenter-O’Brien Corporation was changed to the Brooks-Scanlon Corporation.
On December 16, 1916, the New York Shipbuilding Co.. transferred all of its rights, property, and interest to the New York Shipbuilding Corporation, organized and existing under the laws of the State of New York, included in which transfer was the contract for the building of the ship for the East Coast Transportation Co., referred to above.
On July 11, 1917, the President, by virtue of authority vested in him by the act of Congress of June 15, 1917, 40 Stat. 182, 183, delegated his powers to the United States Shipping Board Emergency Fleet Corporation, and under the authority so conferred the Shipping Board on August 3, 1917, served on the New York Shipbuilding Corporation an order requisitioning “ all power-driven cargo-carrying and passenger ships above 2,500 tons d. w. capacity under construction in your yard, and certain materials, machinery, equipment, and outfit necessary for their completion are hereby requisitioned by the United States.” And by said order the shipbuilding company was required to complete the construction with all practical dispatch. Among the vessels under construction in the yard of the New York Shipbuilding Corporation and included in the requisition order was the ship known as hull 193, and was the same ship which the shipbuilding corporation had agreed to construct for the East Coast Transportation Co. The Shipping Board sent to the East Coast Transportation Co. a letter in which was incorporated a copy of the requisition order which it had sent to the New York Shipbuilding Corporation. *292 On August 28, 1917, the Shipping Board sent to the Carpenter-O’Brien Corporation its order of requisition to the New York Shipbuilding Corporation, and on the same day wrote a letter to the Carpenter-O’Brien Corporation. That letter set out that the Shipping Board had been advised by the New York Shipbuilding Corporation that the contract for the building of hull 198 had been entered into with it by the East Coast Transportation Co., and that the Carpenter-O’Brien Corporation on August 23, 1917, had advised the Shipping Board that the contract for the construction of the vessel had been assigned to the Carpenter-O’Brien Corporation. The letter of the board contained the following paragraphs, among others:
“ The corporation will consider payments to the contractor occurring since the date of requisition, upon the receipt of proper vouchers and adequate information to be forwarded through its district officers. You are requested as soon as possible to report to the corporation a statement in detail of the payments already made by you on each ship named above prior to the date of the requisitioning, August 3,1917. This statement should be accompanied by the original vouchers and receipts and should be verified under oath by the proper corporate officer of your company.
“It is the present intention of the corporation to reimburse you promptly, so far as funds are available, for the payments heretofore made to the shipbuilder. * * *
“At your further and early convenience you are requested to submit to the corporation a statement of such indirect expenditures as you have made on account of each vessel. * * *
“ It will be perceived that the corporation presumes it is addressing this letter to the owners, or responsible representatives of the owners, or persons entitled to receive compensation on account of the requisition of the vessels listed above. The corporation requests that there be included in your response to this letter all evidence of ownership which is necessary to establish the right of those who are entitled to receive the compensation provided by law.”
The Carpenter-O’Brien Corporation forwarded to the Shipping Board a list of payments which had been made by it to the shipbuilding corporation.
The title to the uncompleted ship (hull 193) and the materials which had been delivered or ordered for its completion was in the New York Shipbuilding Corporation on *293 August 3, 1917, the date of the requisition order. On that date the said ship was about 19 per cent completed, and was delivered completed to the United States on September 20, 1918.
On December 8, 1917, the Emergency Fleet Corporation made a contract in writing with the New York Shipbuilding Corporation for the completion and disposal of hull 193, and other hulls set forth in the said contract; hull 193 is the ship in controversy here. The provisions of this contract are set forth in the findings of fact in so far as they are pertinent to the issues in this case.
The plaintiff claims that the United States requisitioned and took its contract with the New York Shipbuilding Corporation, and that it is entitled to recover from the United States the value of that contract at the time of the taking. It claims that the value of the ship measures the value of the contract; and it is shown by the evidence that at the time of the alleged taking of the contract the value of such ships was $200 per dead-weight ton. The ship when completed was 8,597 tons. The value of the ship was therefore $1,719,400. In other words, the plaintiff claims that its contract was worth the value of the ship when completed.
The questions to be determined are: Was there a requisitioning or taking of the contract by the United States; and if there was, what was the value of such contract at the time of the taking ? In this case the President, through the Emergency Fleet Corporation, which acted by virtue of the authority vested in it by him, requisitioned certain ships under construction in the yard of the New York Shipbuilding Corporation. The power to make such requisition was given to the President by the act of Congress of June 15, 1917, while this country was engaged in war with Germany. That part of the act with which we are concerned in this case is as follows:
“(b) To modify, suspend, cancel, or requisition any existing or future contract for the building, production, or purchase of ships or material.
“(e) To purchase, requisition, or take over the title to, or the possession of, for use or operation by the United States, any ship now constructed or in the process of construction or hereafter constructed, or any part thereof, or charter of such ship.
*294 “Compliance with all orders issued hereunder shall be obligatory on any person to whom such order is given, and such order shall take precedence over all other orders and contracts placed with such person.” (40 Stat. 182.)
Under the provisions of this statute the Emergency Fleet-Corporation requisitioned all ships under construction in the plant of the New York Shipbuilding Corporation on August 3, 1917. The language of the requisition order was as follows:
“By virtue of an act of Congress approved June 15, 1917, * * * and by authority delegated to the United States Shipping Board Emergency Fleet Corporation under Executive order of the President dated July 11, 1917, all power-driven cargo-carrying and passenger ships above 2,500 tons d. w. capacity, under construction in your yard, and certain materials, machinery, equipment, outfit, and commitments for materials, machinery, equipment, and outfit necessary for their completion are hereby requisitioned by the United States.”
The intent and purpose of the Shipping Board was, therefore, to requisition ships under construction, which was done in unmistakable language. It is admitted that the ships under construction, the materials, and so forth in the yard of the New York Shipbuilding Corporation were the property of that corporation, and the title to that property was in the shipbuilding corporation alone. Among the ships under construction so requisitioned was hull 7.95, which the shipbuilding corporation was building for the Carpenter-O’Brien Corporation, but it is not contended by the plaintiff that it had any title to or interest in said ship or the materials for its completion. All the interest it had was the right to the delivery of the ship when it should be completed. It follows that the United States did not take or requisition the ship or materials from the Carpenter-O’Brien Corporation, nor did the United States take over or requisition the contract which the Carpenter-O’Brien Corporation had with the shipbuilding corporation.
It was made plain to the Carpenter-O’Brien Corporation that the United States did not intend to requisition the contract, for on August 28, 1917, after notifying the Carpenter-O’Brien Corporation that it had taken over and requisi *295 tioned this ship from the shipbuilding corporation, the Shipping Board by letter of that date stated what its intention was. A copy of said letter is set forth in full in Finding VI. As further evidence showing the intention of the Shipping Board, reference is made to the letter of the board to G. E. McDermott, its officer, and which was communicated to the shipbuilding corporation. A copy of this letter is set forth in Finding VIII. And as final evidence that the United States did not requisition the contract, and never intended to, the United States entered into a contract with the shipbuilding corporation for the completion of all ships under construction in its yard, included in which ships was hull 193, thereby making its own contract for the completion of this ship. This contract is set out in Finding XVI. It is true that the plaintiff by reason of the requisitioning of the ship by the United States was deprived of the right to have delivered to it the ship when completed.
But there has been in this case no direct taking of the contract. The injury inflicted upon the plaintiff is a consequential injury resulting from the exercise of a lawful power in the requisitioning of the ship under construction. The requisitioning has worked indirectly harm and loss to the plaintiff, but not such harm and loss as can be held to obligate the Government to pay for it. The action of the Government may have destroyed the worth of the contract, but the law affords no remedy. The Government by requisitioning the subject matter of the contract does not thereby take the contract. The subject matter in this case was the ship under construction, and that was what the Government requisitioned, not the contract which was the agreement and obligation to perform. The performance of the contract in this case was frustrated and not appropriated. “ Frustration and appropriation are entirely different things.” Omnia Commercial Co. v. United States, decided April 9, 1923 by Supreme Court of the United States, 261 U. S. 502.
Moreover, the building of the ship for the plaintiff was made impossible, and the performance of the contract to build was stopped by the requisition. Its performance was made impossible by an act of the Government. The basis of the mutual agreement between the parties was that the *296 ship would be completed; and it must be held that the contract was entered into on an implied condition that if before the contract was completed its completion was rendered impossible by an act of Government the contract, as between the parties to it, would be at an end, and the parties to it would be absolved from liability under it. Texas Company v. Hogarth Shipping Co., 256 U. S., 619, 631, cited in the Omnia case, supra.
The President, in taking the ship, exercised a power conferred upon him by Congress. If in exercising this power the plaintiff was deprived of any right it may have had under a contract had by it with the person from whom the ship under construction was taken, that does not impose upon the Government an obligation to pay the plaintiff for its right. The deprivation of the right of the plaintiff to have its ship built and delivered to it by the New York Shipbuilding Corporation was incidental to the taking of the ship from its builder, and was not a taking of something for public use. The war powers of the Government were exercised in time of war for the public good and the injury complained of is only incidental to their exercise, and no obligation rests upon the Government to pay for the injury done. In exercising the war powers conferred upon it by the Constitution Congress has legitimately exercised them in the act of June 15, 1917; and having legitimately exercised them the injury to the plaintiff is only incidental td their exercise, and it is not entitled to compensation. Morrisdale Coal Co. v. United States, 55 C. Cls. 310, affiirmed by Supreme Court, 259 U. S. 188; Pine Hill Coal Co. v. U. S., 55 C. Cls. 433, affirmed by Supreme Court, 259 U. S. 191.
The plaintiff presented its claim to the United States Shipping Board Emergency Fleet Corporation for the payment of just compensation under the provisions of the statute, and on January 23,1920, the Emergency Fleet Corporation adopted a resolution awarding to the plaintiff as just compensation the sum of $442,683.82. The plaintiff being dissatisfied with this award refused to accept it and so notified the Emergency Fleet Corporation, and on February 24, 1920, the defendant paid to the plaintiff the sum of $332,-012.87, that sum being 75 per cent of said award. It appears *297 from the evidence in this case that the award of just compensation made by the Shipping Board to the plaintiff was made np of two items, to wit: The sum of $265,453.38, which sum was on account of progress payments made by the plaintiff and its assignors to the New York Shipbuilding Corporation ; and the second item was the sum of $177,230.44, which was computed to be the value of the materials, equipment, and machinery which were in the yard of the New York Shipbuilding Corporation at the time of the requisition. The materials, etc., were not the property of the plaintiff but belonged to the shipbuilding company, and should not therefore have been taken into account in arriving at the compensation due the plaintiff.
The evidence in the case, however, discloses that the plaintiff and its assignors had paid to the New York Shipbuilding Corporation the sum of $447,933.33 on the construction of the ship before August 3,1917, the date of the requisition; and the United States received the berifit of this sum when it settled with the shipbuilding corporation upon the completion of the ship. The United States also got the benefit of the sum of $5,500 paid to architects by the plaintiff, and of the sum of $20,277.25 the value of the plans and specifications paid for by the plaintiff, making in all the sum of $473,710.58 which was paid out by the plaintiff for the construction of said ship. Of this amount the plaintiff has been paid the sum of $332,012.87, leaving the sum of $141,697.71 still unpaid.
When the Emergency Fleet Corporation requisitioned the ship under construction which the shipbuilding corporation had contracted to build for the Carpenter-O’Brien Co., it also took and appropriated under its order of requisition the payments which the Carpenter-O’Brien Co. had made to the shipbuilding corporation, and also took over the plans and specifications which had been paid for by the last-named company. This is evidenced by the letter of August 28, 1917, written by the Fleet Corporation to the Carpenter-O’Brien Co., and by the following clause in the contract which the United States made with the shipbuilding corporation for the completion of the ship: “ There shall be credited, *298 however, in favor of the Fleet Corporation all sums heretofore received by the shipbuilding corporation on account of the construction of such 10 ships,, respectively, either from the formen owners or from the Fleet Corporation.” The record discloses that the sums paid by the Carpenter-O’Brien Co. were credited in favor of the Fleet Corporation, and were therefore taken and appropriated by the Fleet Corporation for the benefit of the United States, which was done by virtue of the provisions of the act of June 15, 1917. And the plaintiff is entitled to recover the amounts of money requisitioned and appropriated by the United States. The plaintiff claims that it is entitled to interest on the money requisitioned as a part of the just compensation to which it is entitled. The act providing for just compensation makes no provision in respect of interest. 40 Stat. 183. The plaintiff’s right in this case does not depend on contract, express or implied. This suit is a part of the authorized procedure initiated by the United States under the provisions of the statute cited above. The plaintiff was not satisfied with the amount fixed by the President and brought this suit. The question here is whether the payment at a subsequent date of the amount of money requisitioned is sufficient to constitute just, compensation, and shall interest on the amount of money requisitioned be considered as a part of the just compensation to which the plaintiff is entitled % The answer to this question is found in the opinion of. the Supreme Court of the United States in the case of Seaboard Air Line Ry. Co. et al. v. United States, 261 U. S. 299. Mr. Justice Butler, speaking for the court, says: “ The requirement that just compensation ’ shall be paid is comprehensive and includes all elements, and no specific command to include interest is necessary when interest or its equivalent is a part of such compensation.” This court is of opinion that the allowance of interest is necessary in order that the plaintiff shall have the “ just compensation ” to which it is entitled. Seaboard Air Line Ry. Co. v. United States, supra.
The plaintiff is therefore entitled in addition to the sum of $141,697.71 to have interest on $445,277.25 from August 3, 1917, to February 24, 1920, which amounts to the sum of *299 $68,350.06, and interest on $113,264.38 from February 24, 1920, to April 23, 1923, which amounts to the sum of $21,-501.35. The judgment for the plaintiff will therefore be the sum of $231,549.12.
GRAHAM, Judge; DowNey, Judge; and Booth, Judge, ■concur.