## CALIFORNIA IRON YARDS CO. v. COMMISSIONER OF INTERNAL REVENUE.*
### No. 5962.

Circuit Court of Appeals, Ninth Circuit.
Feb. 9, 1931.

W. W. Spalding and Robert A. Littleton, both of Washington, D. C., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and Morton Poe Fisher, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before DIETRICH and WILBUR, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

The petitioner seeks to review the action of the Board of Tax Appeals in affirming an order of the Commissioner of Internal Revenue fixing a deficiency tax of the petitioner for the years 1918, 1919, and 1920. The principal question in the case involves the validity and effect of a waiver of January 16, 1925. This waiver was signed more than five years after the return made by the petitioner for the year 1919, and it is contended by the petitioner that, in as much as this waiver was executed more than five years after return, and therefore after the limitation for assessment of the tax for the year 1919, it did not authorize the assessment which was made by the Commissioner on December 16, 1925. As the courts were divided upon that question (see note 1, p. 146 opinion of Supreme Court in Stange v. United States, 51 S. Ct. 145, 75 L. Ed. ——, affirming 68 Ct. Cl. 395, decided November 4, 1929), and, as the matter was then pending before the Supreme Court in that case on certiorari from the Court of Claims, it was suggested that a decision herein be postponed until the decision by the Supreme Court in that case. This decision was ren-

*Rehearing denied April 13, 1931.

dered January 5, 1931. It is there held in accordance with the contention of the Commissioner in this case that the waiver was effective notwithstanding that it was executed after the running of the statute of limitations. It follows that a properly executed waiver was effective notwithstanding the expiration of the period for making the assessment before the execution of the waiver.

The petitioner, however, contends that the waiver here in question was not properly executed and is not binding upon the petitioner. In order to understand the proposition advanced it will be necessary to state additional facts.

The California Iron Yards Company, a California corporation, was organized about February 3, 1914, to take over the business of dealing in scrap iron which had theretofore been conducted by Wm. M. McDaniel, E. D. Keeffe, and D. J. A. O'Keefe. On December 8, 1920, the officers of the California Iron Yards Company, with the unanimous consent of its stockholders, transferred its business, property, and assets to the California Iron Yards Corporation in exchange for its capital stock and of an agreement by the latter corporation to assume and pay all the obligations of the first-mentioned company. After this transfer the petitioner failed to pay its corporate tax to the state of California, and under and by virtue of the laws of California was, on March 5, 1921, and ever since has been, suspended on account of its failure to pay its license tax due to the state of California under the statutes thereof. Kerr's Political Code of California, § 3669c, subd. 2. It is claimed by the petitioner that, in view of this suspension of powers of the petitioner, it was incapable of executing the waiver in question.

On the hearing before the Board of Tax Appeals it was stipulated as follows: "At the taking of the depositions of witnesses on April 24, 1928, it was stipulated that for the fiscal years of the California Iron Yards Company ended January 31, 1919, the California Iron Yards Company executed and filed with the Bureau of Internal Revenue Income and Excess Profits Tax Waivers as follows: 'Income and Profits Tax Waiver dated January 16, 1925, by the California Iron Yards Company for the years 1918 and 1919.' "

It is also stipulated that a certificate of the California secretary of state should be received in evidence, which certificate stated in effect that the powers of the corporation were suspended from and after March 5, 1921, and that said corporate rights and privileges and powers of the corporation remained suspended. While the stipulation that the waiver was executed by the taxpayer, the California Iron Yards Company, is sufficiently broad to cover all questions concerning the power of the officers executing the agreement and the method of signing the agreement, the additional stipulation with regard to the suspension of the powers of the corporation under the law of California requires us to consider whether or not any officer or representative of the corporation could act for it in waiving the statute of limitations for the imposition of a deficiency tax under the laws of the United States. Revenue Act 1921, § 250(d), 42 Stat. 227, 265.

The law of California suspending the corporate powers (section 3669c, subd. 2, Pol. Code of Cal., supra) provides that for nonpayment of the corporate license tax "the corporate rights, privileges and powers of every domestic corporation which has failed to pay said tax and money penalty shall, from and after said hour of said day, be suspended, and incapable of being exercised for any purpose or in any manner, except to defend any action brought in any court against such corporation, until said tax with all accrued penalties, and all taxes and charges due the state under the Corporation License Act are paid as hereinafter provided." It is also provided that "until such taxes, penalties and charges are paid, every person who attempts or purports to exercise any of the rights, privileges or powers of any delinquent corporation, * * * shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine of not less than two hundred fifty dollars. * * * Every contract made in violation of this section is hereby declared to be void."

The question thus presented is whether or not the corporation which is in default for failure to pay its license tax to the state of California is prohibited by the above-quoted law of that state from filing a waiver with reference to the imposition of taxes as authorized by the laws of the United States. If by the laws of California the penalty for failure to pay the license tax was the forfeiture of its charter and the dissolution of the corporation, as was formerly the case, it might well be contended that, in view of the fact that the corporation no longer exists, it could not take advantage of any law of the federal govern-

ment authorizing a corporation to act in reference to federal taxes for the same reason that a dead person could not act under laws authorizing living individuals to act. The status of such a corporation in California, however, is one of suspended animation. 7 Cal. Jur. 640; Hanson v. Choynski, 180 Cal. 275, 180 P. 816; Rossi v. Caire, 186 Cal. 544, 199 P. 1042; Ransome-Crummey Co. v. Superior Court, 188 Cal. 393, 205 P. 446.

The question is whether such a corporation which can at any time be revived with full corporate powers upon paying its license tax to the state, and which is deprived of its powers solely for the purpose of enforcing its obligation to the state, has sufficient vitality to act under the federal law authorizing it so to do in connection with tax matters which affect the federal government. In considering this matter it is obvious at the outset that the entire purpose of the California statute is to punish the corporation for its default in the payment of the state license taxes and not to interfere with the enforcement of a similar right by the federal government in connection with the collection of the taxes due to it. It is a fundamental rule of construction that general language in a statute does not apply to the sovereign. U. S. v. Herron, 87 U. S. (20 Wall.) 251, 22 L. Ed. 275; Dollar Savings Bank v. U. S., 86 U. S. (19 Wall.) 227, 22 L. Ed. 80; U. S. v. Hoar, 2 Mason 311, Fed. Cas. No. 15,373, page 329; Balthasar v. Pac. Elec. Ry. Co., 187 Cal. 302, 305, 202 P. 37, 19 A. L. R. 452; State v. Royal Cons. Ming. Co., 187 Cal. 343, 202 P. 133; Pine Hill Coal Co. v. U. S., 259 U. S. 191, 42 S. Ct. 482, 66 L. Ed. 894. It would seem to follow from this principle that contracts entered into by the delinquent corporation with the representatives of the federal government in the exercise of their powers under the laws of the United States would not be included in the class of contracts thus declared void by the state Legislature. The same rule would seem also to make inapplicable those provisions of the state statute imposing a penalty upon the officers of the corporation for attempting to so act on its behalf. Even if we grant, which we do not, that the state would have power to punish its citizens for acting under or complying with the laws of the United States with relation to the imposition and collection of taxes, the rules of construction above mentioned would prevent such an interpretation, being placed on the general language of the above-quoted state statute. We do not think that under the state statute

rightly construed the contract or waiver in question was void, nor that the acts of the officers, directors, or stockholders in executing the waiver in question were in violation of the penal provisions of the California statute. Moreover, if we concede that the corporation was prohibited by the terms of the state statute from making the waiver in question, such state statute would not control the rights of the corporation or of the government, for the authority to make the waiver in question is not derived from the state of California, but is derived from the United States, and, so long as the corporation retains its status as a taxpayer, it is authorized by the federal government to make such waiver, and the inhibition of the state statute against such action is unavailing. As was said by the Court of Claims in Aldridge, Executrix, v. U. S., 64 Ct. Cl. 424: " * * * Congress * * * had the power * * * to provide not only a statute of limitations but the right to waive the limitation, and this right was given to the taxpayer. It can not be contended that the power of Congress to confer the right can be taken away by a State statute, much less by the decision of a State court. To say that the right can be granted but the privilege of exercising it can be limited or taken away by a State statute or a decision of a State court would be in effect to destroy the right and thus nullify the act of Congress. The principle here involved was established many years ago in the case of Gibbons v. Ogden, 9 Wheat. 1 [6 L. Ed. 23], and is too well known to need discussion."

This court had occasion to consider the power of a delinquent California Corporation (In re Pacific Alloy & Steel Co. [C. C. A.] 299 F. 952, 953) to file a voluntary petition in bankruptcy under the federal Bankruptcy Law, although by the terms of the state statute hereinabove quoted (Pol. Code, § 3669c, subd. 2) the right of the corporate officers or of the corporation so to act was prohibited because of the nonpayment of its state license taxes. The court there stated: "In matters relating to bankruptcy the power of Congress is paramount (Taubel-Scott-Kitzmiller Co. v. Fox [264 U. S. 426], 44 S. Ct. 396, 68 L. Ed. 770, decided Apr. 7, 1924) and no intention will be attributed to the California statute to interfere with that measure of protection accorded to creditors by the bankruptcy laws of the United States."

We held that, so long as the taxpayer retains its corporate identity, it was not, and indeed could not, be deprived of its right to

avail itself of the provisions of the federal law with relation to the imposition of taxes by state legislation.

It follows that the waiver in question was effective and the assessment in question was in time.

■ Unless the foregoing rule is correct it would be difficult to justify the filing by the suspended taxpayer corporation of the petition to review the action of the Commissioner in assessing the tax and its present appeal to this court. The petitioner justifies its appearance in this court on the ground that it is in effect defending an action brought "in court" against the corporation, but this position cannot be maintained. The assessment by the Commissioner is in no sense an action "in court." The petitioner acts affirmatively and does not "defend an action in court" in taking an appeal to the Board of Tax Appeals, and this board is not a court but an administrative body. A petition filed with this court to review the action of the Board of Tax Appeals is an affirmative action by the petitioner not justified by the California statute. But we think the entire procedure by the taxpayer justified and authorized by the federal law, and that the same rule which authorized the appearance of the delinquent corporation before the Board of Tax Appeals and before this court authorized and justified the abovementioned waiver filed by it with the Commissioner of Internal Revenue.

■ It remains to consider the question presented by the supplemental and amended petition of the taxpayer in which he claims that the Board of Tax Appeals erred in not allowing sufficient deductions for depreciation and obsolescence of machinery. The claim is that the machinery and equipment of the taxpayer for the fiscal years ending January 31, 1918, 1919, and 1920, cost $81,867.97, and that the Board of Tax Appeals found as a fact that "under the conditions which said machinery was used it had a useful life of only five years." Therefore it is claimed that the Board erred in not giving a deduction of 20 per cent. per annum for depreciation and obsolescence for each of the three years in question. In its opinion, on that subject, the Board of Tax Appeals said: "The only testimony introduced as to the life of the assets and the depreciation sustained was of a very general nature. It consisted of testimony that machinery left out in the open and unprotected by housing in that locality in which the petitioner's plant was located would have

an average life of five years if left idle and not operated or kept up by repairs. The principal witness, a lawyer by profession, on this question does not appear to have seen the assets until 1923. During the years 1918 and 1919, however, petitioner's machinery and equipment was operated at full capacity. The petitioner was on a fiscal year basis ending January 31. Only one month of the fiscal year 1920 was in the calendar year 1920. There was testimony that during the year 1920 a great part of the machinery was idle and a considerable part of it exposed to the weather, but there is no evidence that, during any portion of the fiscal years involved here, such was the case. The fiscal year 1921, which comprised all the calendar year 1920 except January, is not before us. The testimony as to the five-year life on idle equipment does not apply. It has further been shown that four shears purchased in 1917 or 1918 were sold in October, 1925, by the successor corporation, seven or eight years later, for $2,000 which indicated clearly that at that time they were not fully depreciated as they would have been if they had had a life of 5 years according to the testimony. It is also shown that two magnets purchased in 1918 were sold seven years later by the successor corporation, and the Gantry crane purchased in 1918 was sold by the successor in 1925 for $1,750. These three classes of machines represented a substantial part of the petitioner's equipment, and each had a life in excess of seven years although they had become idle in 1920. The locomotive crane, one magnet, one set of shears, and the electrical equipment were still in use at the time of this hearing, as were also some of the buildings and part of the trackage. This evidence does not convince us that petitioner is entitled to a deduction on account of the exhaustion, wear, tear and obsolescence during the years involved in this proceeding at the rate it claims, or in any greater amount than that determined by the respondent."

■ It thus appears from the opinion of the Board of Tax Appeals that the petitioner had failed to sustain the burden of proof as to the amount of depreciation in excess of that allowed by the Commissioner, and for that reason the Commissioner's findings were sustained. The petitioner, however, contends that the opinion of the Board of Tax Appeals should be disregarded, and that the findings of the Board of Tax Appeals on the same subject affirmatively show that the depreciation was 20 per cent. as claimed. Without

518

setting out these findings in detail it is sufficient to say that appellant relies upon the following findings: "Machinery and equipment of this character and in this location would in general have a life of about five years if left idle and uncared for and not protected by paint or other protective covering." But the Board also found that "the petitioner's machinery that was in active use was kept in better condition and repair than that which was not in active use." In view of the fact that during practically the entire period covered by the taxes here in question the property was in active use, it is obvious that the general finding with relation to deterioration where the property was left idle and uncared for would not control. In addition to these general findings upon the subject of depreciation and obsolescence, the Board of Tax Appeals found in detail the nature and character of the property, that the equipment was used to capacity during the years 1918 and 1919, and certain portions of the equipment were sold at various periods for amounts stated in the findings, and there is nothing in this finding to indicate that the allowance for obsolescence should exceed the 12 per cent. allowed by the Commissioner. Even if we ignore the statement above quoted in the opinion of the Board, as the Commissioner claims we should do, the findings do not show a depreciation of 20 per cent. for the reasons quoted. However, we are not confined to the findings as distinguished from the opinion of the Board of Tax Appeals. The petitioner, to support its contention to the contrary, relies upon an opinion of the Circuit Court of Appeals for the eighth circuit, Kendrick Coal & Dock Co. v. Commissioner, 29 F.(2d) 559 to page 564, where it was said: "Resort may not be had to the opinion to eke out the findings of fact." However, after that decision the law regulating the procedure before the Board of Tax Appeals was changed by the Revenue Act of 1928 (45 Stat. 795, 872, § 601, 26 USCA § 1219(b) so as to require an opinion as a part of the record. Under this legislation it is held by the Circuit Court of Appeals for the second circuit that the court might look to the opinion of the Board of Tax Appeals as well as the findings to ascertain what was decided by the Board. Upon the authority of that opinion, Insurance & Title Guarantee Co. v. Commissioner of Internal Revenue, 36 F.(2d) 842, 845, with which we concur, it is apparent that the petition did not sustain the burden of proof upon the question of depreciation and obsolescence.

Order affirmed.

NORCROSS, District Judge, concurs.