### MARYLAND CASUALTY CO. v. UNITED STATES.

Civil Action No. 2474.

District Court, D. Maryland.

Nov. 23, 1945.

630

Roszel C. Thomsen (of Clark, Thomsen & Smith), of Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., of Baltimore, Md., John F. Sonnett, Asst. Atty. Gen., and Alfred S. Berg and Ellis Lyons, Attys., Department of Justice, both of Washington, D. C., for defendant.

CHESNUT, District Judge.

This is a suit under the Tucker Act, 28 U.S.C.A. § 41(20). The plaintiff, Maryland Casualty Company, a Maryland Corporation, is suing the United States to recover the sum of $7,000 which it, as surety on an Army officer's bond, paid to the United States in 1938. In 1943 Congress passed a special Act for the relief of the Army officer directing the General Accounting Office to credit him in the amount of $49,612.18, which represented the full original amount of the claim of the United States against him. It is the contention of the plaintiff that the $7,000 paid by it was on account of the original indebtedness and that by subrogation it is entitled to recover that sum now.

The answer of the United States admits the principal facts alleged in the complaint but sets up two defenses: (a) That the court does not have jurisdiction of this particular case under the Tucker Act, and (b) that the facts set out in the complaint state no sufficient cause of action. This second defense is based upon construction of the private law of Congress referred to. Both parties have respectively moved for a judgment on the pleadings, Federal Rules of Civil Procedure, Rule 12(c) 28 U.S.C.A. following section 723c.

While I think the case substantially turns on the construction of the Act of Congress, it is necessary to briefly state the facts set out in the complaint in order to have a proper understanding of the respective contentions.

In 1917 Samuel J. Marshall was disbursing officer in the Quartermaster Department of the United States Army. He as principal and the Maryland Casualty Company as surety executed an official bond to the United States in the penal sum of $10,000, conditioned upon proper accounting by the officer. In 1926 the General Accounting Office made claim against Captain Marshall in the amount of $49,-112.18, which, in 1930, was increased to $49,612.18.

In 1928 the United States sued Marshall and his surety jointly, claiming $49,112.18 against Marshall, and $10,000 from the surety. A Bill for the relief of Marshall was introduced in Congress in 1928 and similar Bills were introduced during subsequent sessions. An Act for his relief was finally passed and approved on December 23, 1943.

In the meantime, however, the United States pressed for final disposition of the suit which was pending in the District Court for the Eastern District of Pennsylvania. In consequence thereof, on or about October 20, 1938, the Casualty Company as surety for Captain Marshall paid to the United States $7,000 which was received by the United States in compromise of the surety's liability and (as alleged by the Casualty Company in this case) "was credited or should have been credited to the account of said Marshall". (This last averment is not admitted in the answer). The suit was marked "settled, ended and discontinued as to the Maryland Casualty Company alone." On January 25, 1944, following the passage of the Act of Congress referred to, the suit against Marshall was "discontinued without cost".

The Act of Congress referred to, Private Law 165, 78th Cong. ch/384, 1st. Sess.H.R. 2545, 57 Stat. 718, was entitled "An Act for the relief of Samuel J. D. Marshall" and was approved by the President and became law. That Act provided as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the General Accounting Office be, and is hereby, authorized and directed to credit the account of Samuel J. D. Marshall, former captain, Quartermaster Corps, United States Army, disbursing officer of the Army

at Camp Stewart, Virginia, and Mitchel Field, Long Island, New York, with $49,-612.18, this sum being an alleged shortage in the accounts of the said Samuel J. D. Marshall and a balance due the United States while acting as disbursing officer at Camp Stewart, and Mitchel Field, New York, due to the lack of evidence to support certain disbursements."

■■ In my opinion the court has prop-er jurisdiction of this suit under the Tucker Act. It is true, of course, that the United States is immune from suit unless Congress has otherwise clearly provided. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058; United States v. Michel, 282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598. 28 U.S.C.A. § 41(20), the Tucker Act, pro-vides that the district courts shall have jurisdiction of claims not exceeding $10,000 founded "upon * * * any law of Con-gress, or upon any regulation of an exe-cutive department, or upon any contract, express or implied, of the Government of the United States." The present suit is obviously founded on the private Act of Congress in this case and I think the au-thorities fairly support the jurisdiction. McLean v. United States, 226 U.S. 374, 33 S.Ct. 122, 57 L.Ed. 260; United States v. Emery, 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825; Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561; Medbury v. United States, 173 U.S. 492, 19 S.Ct. 503, 43 L.Ed. 779; Bang v. United States 8 Cir., 117 F.2d 515; Ross Packing Co. v. United States, D.C., 42 F.Supp. 932. Cf. Baltimore Mail SS Co. v. United States, 4 Cir., 76 F.2d 582, certiorari denied 296 U.S. 595, 56 S.Ct. 111, 80 L.Ed. 421.

Before coming to the determination of the effect of the private Act relied upon by the plaintiff, it may be noted that Captain Marshall is not a party to this present suit. The payment made by the Casualty Com-pany was made more than six years prior to the institution of this suit on February 16, 1945, and 28 U.S.C.A. § 41(20) pro-vides "No suit against the Government of the United States shall be allowed under this paragraph unless the same shall have been brought within six years after the right accrued for which the claim is made;" but this seems immaterial as the plaintiff's claim is founded on the Act of 1943. More importantly, the complaint states that the payment of $7,000 was made "in compro-

mise" of the surety's liability. At the oral argument on the motions in this case for judgments on the pleadings, it was sug-gested by the court that it might be prefer-able to overrule both motions and have the case submitted for final decision on evi-dence rather than on the pleadings, with the possibility that there might be relevant and important evidence relating to the circum-stances surrounding the compromise settle-ment and possibly some evidence with re-gard to the handling of Captain Marshall's account in the General Accounting Office after the payment was made. But the court understood that this suggestion was not ac-cepted by counsel for either party, pre-sumably because both felt that no further material facts could be presented for the determination of the questions of law submitted.

With respect to the effect of the Act of Congress, the argument for the plaintiff runs as follows. The whole of the govern-ment's claim against Captain Marshall was only $49,612.18. When the Casualty Com-pany paid $7,000, the amount was reduced to $42,612.18. The Act directed that a credit be given Captain Marshall in the amount of $49,612.18. The accounting re-sult therefore is that the government stands indebted on the books of the General Accounting Office in the amount of $7,000 and that the Casualty Company by sub-rogation is entitled to receive the amount of the net credit to Captain Marshall.

■ In the field of accounting the argument is plausible and seemingly fair and correct; but the controlling point with which we are dealing is necessarily in the purely legal field. The question is whether the effect of the Act is to impose a *liability* on the United States to repay either to Captain Marshall or to his surety the sum of $7,000. Private Acts of this nature are, of course, to be strictly construed when rights against the United States under them are asserted. United States v. Goltra, 312 U.S. 203, 210, 61 S.Ct. 487, 85 L.Ed. 776, note 20; Klamath Indians v. United States, 296 U.S. 244, 250, 56 S.Ct. 212, 80 L.Ed. 202. The Act does not in terms direct a repayment of the amount which had already been paid on account of Mar-shall's indebtedness to the United States, nor does it make any reference to the plain-tiff. Both Houses of Congress passed the Act after reports from their respective committees, seemingly in nearly identical terms, being House Report No. 436, and

Senate Report No. 524. It appears that passage of the Act was recommended by the Secretary of War by reason of special conditions of difficulty and confusion affecting Captain Marshall's accounting duties during the period of demobilization after the First World War. The report also includes correspondence upon the subject of the particular claim running over a period of many years from 1919, some or most of which had been submitted in connection with the Bill for the same subject matter pending before prior Sessions of Congress. It is true the Act directs a credit on the amount of $49,612.18, being the whole amount of the government's claim before $7,000 was paid by the plaintiff as surety; but there is nothing in the Act itself or, so far as I can find, in the legislative history of the Act, to show that Congress was aware that $7,000 had been paid by the surety in compromise of litigation. The tenor of the Act gathered from its title and context seems to be limited to a Bill for the personal relief of Captain Marshall. The language of the Act is consistent only with the view that Congress intended to give up any claim of the United States against Captain Marshall and is not consistent with the view that it was the intention to create a claim *against the United States*. In any event the language and import of the Act is too doubtful and uncertain to justify the creation of a liability against the government. Pine Hill Co. v. United States, 259 U.S. 191, 196, 42 S.Ct. 482, 66 L.Ed. 894. Counsel for the United States in this case refers to the typical language generally used by Congress in private Acts of this character where it is the intention to authorize the payment out of moneys of the United States. Private Law 267, 77th Cong.2d Sess. 56 Stat. 1105; Private Law 114, 78th Cong. 1st Sess. 57 Stat. 696; Private Law 38, 78th Cong. 1st Sess. 57 Stat. 662. Such Private Acts customarily contain express language directing payments to be made. In the case of the present Act we have language which does not contain any affirmative direction with respect to the payment of moneys.

There is a further complication that confronts the plaintiff in this case, in that the payment it made was in consequence of a *compromise* of litigation; and there are no other facts appearing to qualify or further explain that averment in the complaint. The complaint does not affirmatively allege the payment was made with the consent of Marshall, or at his request; though the government's counsel did not make any point of this. See Parker v. United States, 22 Ct.Cl. 100; Knote v. United States, 95 U.S. 149, 24 L.Ed. 442. Counsel for the plaintiff have not called to my attention, nor have I found, any case which holds the United States liable under a private Act of this character where the payment was made by a surety under similar circumstances.

It is possible, of course, that if Congress had been fully advised with respect to the exact situation it might have authorized a refund of the $7,000 to the surety. But I am unable to say that a fair construction of the Act as passed does do so. I conclude therefore that if the plaintiff is entitled to any further relief it must make application to Congress; unless possibly the plaintiff can successfully invoke the jurisdiction of the Court of Claims under 28 U.S.C.A. § 253. White v. United States, 72 Ct.Cl. 375; Hurley v. Shanley, 61 App.D.C. 237, 60 F.2d 335.

The result is that the plaintiff's motions for judgment on the pleadings must be *overruled*, and the defendant's motion must be granted. Counsel may submit the appropriate order in due course.