ROBERT BASS, PETITIONER-APPELLANT, v. ALLEN HOME IMPROVEMENT COMPANY, RESPONDENT-RESPONDENT.

Argued October 29, 1951—Decided November 19, 1951.

220

Mr. *Henry Harris* argued the cause for appellant (*Messrs.*
*Rothbard, Harris & Oxfeld,* attorneys).

Mr. *Andrew Lawrie* argued the cause for respondent.

The opinion of the court was delivered by

WACHENFELD, J. The construction and applicability of a 1950 amendment to the Workmen's Compensation Act is our main concern here, the specific question being whether the maximum compensation rate for partial permanent disability was thereby raised from $25 to $30 per week.

The facts are not disputed. The plaintiff was injured on January 2, 1951, in an accident which, it is stipulated, arose out of and in the course of his employment. He slipped and fell and was burned by hot tar causing second- and third-degree burns. He filed a claim and hearings were held before a deputy director of the Division of Workmen's Compensation to determine the extent of his disability and the amount of the award.

It was decided that the petitioner was temporarily disabled during a period of 4 3/7 weeks for which he was entitled to compensation at the rate of $30 per week, totalling $132.86, and that he suffered a permanent injury to the extent of three per cent of total disability, or 16½ weeks at the rate of $30 per week, totalling $495. In making this latter award, the deputy director construed *R. S.* 34:15–12, as amended, to increase the maximum compensation rate for partial permanent disability to $30 per week.

On appeal, the County Court reversed the finding so made and held the 1950 amendment did not operate to increase the applicable maximum and the latter remained at $25 per week. The award for permanent disability was accordingly reduced and the petitioner appeals. We took jurisdiction of the appeal by granting a petition to certify.

*R. S.* 34:15–12, as amended, provides a schedule of payments to take effect January 1, 1951. Paragraph a. increased the maximum award for temporary disability from $25 to $30 per week. Paragraph b., covering permanent total disability, was not changed by the amendment and the maximum award remained at $25 per week with provision for payment at this rate for a minimum of 450 weeks and further payment thereafter where "the employee shall have submitted to such

physical or educational rehabilitation as may have been ordered by the rehabilitation commission."

Paragraph c. is merely introductory and provides:

"For disability partial in character, but permanent in quality, the compensation shall be based upon the extent of such disability. In cases included in the following schedule the compensation shall be that named in the schedule, to wit:"

Then follows a series of subparagraphs, lettered d. to vv., setting forth certain named disabilities such as the loss of an eye, hand, foot, arm or leg, and establishing the rate of compensation payable therefor as a fixed percentage of daily wages for a specified period. Subparagraph w., under which the claim now before us arose, establishes the percentage rate and duration to be allowed "in all lesser or other cases involving permanent loss, or where the usefulness of a member or any physical function is permanently impaired," and x. makes 48-hour notice to the employer a condition prerequisite to a claim for compensation for traumatic hernia.

█ It is evident from the wording and punctuation of paragraph c. that the ensuing paragraphs, although lettered as coordinate parts of the same series, are actually subdivisions of c., part of "the following schedule" hinging upon the introductory "to wit." Unlike, and in contrast to, paragraphs a. and b., these subparagraphs (d. to w.) provide no maximum or minimum compensation expressed in terms of dollars. No such limitation is encountered until we come to paragraph y.:

"The weekly compensation payments specified in this section are all subject to the same limitation as to maximum and minimum as are stated in paragraph 'a' hereof."

Until the new amendment became effective, on January 1, 1951, the maximum and minimum awards provided in both paragraphs, a. and b., were $25 and $10 weekly. Paragraph y. is carried over without change from the old statute. Then, as now, the only injuries for which no dollar limitations on the amounts of compensation awards were individually pro-

vided were those set forth in paragraphs d. to w. The function and purpose of y. obviously was to establish the limitation in such cases, which comprise "the following schedule," in one all-embracing clause by reference to the amounts mentioned in paragraph a.

It is contended by the respondent that the proper and intended maximum is that provided in paragraph b., namely, $25 per week. Such a designed change is, however, nowhere manifested in the amendment as adopted by the Legislature and approved by the Governor. Paragraph y. plainly refers to paragraph a. as governing the maximum award. To delete and take out of a statute figures, words or phrases specifically and pointedly appearing therein, thereby completely changing and nullifying the normal or ordinary meaning of the act, would seldom be justified. The intention to effect a change in substance must be expressed in language excluding a reasonable doubt. *Murphy v. Zink,* 136 *N. J. L.* 235 (*Sup. Ct.* 1947), affirmed 136 *N. J. L.* 635 (*E. & A.* 1947).

The respondent, in the hearing before the Deputy Director, attempting to fortify its theory, called as a witness the member of the Legislature who introduced and sponsored the amendment. Although it was objected to upon the ground that he was only one member of the Legislature and was not qualified to evidence the intent of the whole body, he testified that he first introduced a bill to raise all maximums to $30 per week but could not muster sufficient votes for its passage. The Legislature was willing to increase the maximum only for temporary disability. Subparagraph y., he said, setting the maximum at $30 per week by reference to subparagraph a., was carried over inadvertently from the old statute.

The court below relied on the legislative history of the amendment and further reasoned that the provision in subparagraph y. setting the maximum awards at the $30 rate contained in subparagraph a. was merely an inadvertent carryover by emphasizing that if a person had a partial permanent disability in the loss of one leg, he could receive

$30 per week, whereas if he lost the other leg and so had total permanent disability, he would be reduced to $25 a week. It commented: "Needless to say, such a construction which produces such anomalies is not within the spirit and intendment of this amendment."

■ This conclusion, we think, overlooks the fact that in the case of total permanent disability the compensation period is 450 weeks, whereas in the case of partial permanent disability it is 275 weeks. Thus, the workman who is permanently and totally disabled receives compensation for a minimum period exceeding by more than three years the maximum compensation period of the partially disabled one. In addition, the person who is totally disabled may receive further compensation, beyond the 450-week period, to the extent the wages he can then earn are less than the wages he was earning at the time of the accident or, in any event, a minimum of $5 per week. No such provision is made for the person who is only partially disabled. At the end of 275 weeks his compensation stops. Thus, the result achieved by the plain wording of the statute as amended is not such an anomaly as suggested.

■ When a statute is ambiguous on its face, the preamble and the history of the legislation may, under some circumstances, be examined to assist in ascertaining the legislative intent. *Grobart v. Grobart,* 5 *N. J.* 161 (1950); *Blackman v. Iles,* 4 *N. J.* 83 (1950).

There are some rather broad pronouncements in federal cases concerning the propriety of the courts' delving into legislative history to determine the intent of Congress in enacting laws, and the court, in *U. S. v. Fischer,* 2 *Cranch* (*U. S.*) 358, 2 *L. Ed.* 304 (1804), said: "Where the mind labors to discover the design of the legislature it seizes everything from which aid can be derived," but Mr. Justice Holmes, in *Pinehill Coal Co. v. U. S.,* 259 *U. S.* 191, 66 *L. Ed.* 894 (1921), wisely observed: "It is a delicate business to base speculations about the purposes or construction of a statute upon the vicissitudes of its passage."

The respondent, arguing for the admissibility of the testi-mony, seeks support in *Tappan Washington Memorial Corp. v. Margetts*, 9 *N. J. Super.* 212 (*App. Div.* 1950). The rationale of the dictum in that case, as we read it, has a tendency to follow the broader concept embraced by the federal adjudications.

The rule prevailing in this State is, however, more restricted. Our decisions hold that where the wording of the statute, as here, is explicit and clear, the court is not free to indulge in a presumption, arising from extrinsic evidence, that the Legislature intended something other than what it actually expressed. Excepting where uncertainty or ambiguity appears, the enactment must speak for itself and be construed according to its own terms.

This rule of construction was laid down in the early case of *Den v. Urison*, 2 *N. J. L.* 197 (*Sup. Ct.* 1807), in these words:

"It appears to me, to be a settled principle of law, that the preamble cannot control the enacting part of the statute, in cases where the enacting part is expressed in clear, unambiguous terms; but in case any doubt arises on the enacting part, the preamble may be resorted to, to explain it and show the intention of the law maker."

It has been applied and followed, according to the facts of each case, in *Keyport Steamboat Co. v. Farmers Transportation Co.*, 18 *N. J. Eq.* 13 (*Ch.* 1866); *In re Murphy*, 23 *N. J. L.* 180 (*Sup. Ct.* 1851); *Sooy ads. State*, 38 *N. J. L.* 324 (*Sup. Ct.* 1876); *Pierson v. Cady*, 84 *N. J. L.* 54 (*Sup. Ct.* 1913); *Brown v. Erie R. R. Co.*, 87 *N. J. L.* 487 (*E. & A.* 1915); *Alert B. & L. Ass'n. v. Bechtold*, 120 *N. J. L.* 397 (*E. & A.* 1938); *Flagg v. Johansen*, 124 *N. J. L.* 456 (*Sup. Ct.* 1940).

We have recently restated the rule in *Blackman v. Iles, supra*:

"Although it has been generally held that the preamble is 'no part of the act' and will not control the enacting part of the statute in cases where the statute is expressed in clear, unambiguous terms,

nevertheless our courts have said on innumerable occasions that the preamble may be considered to assist in determining the intention of the law makers where any doubt arises concerning the construction to be placed upon the enacting part."

and affirmed it again in *Grobart v. Grobart, supra.*

█ Applying the principles of statutory construction so enunciated to the record presently before us, we must conclude that the admission of the testimony adverted to was error.

Despite the testimony so offered in the Bureau, the Deputy Director found that the act as amended specified the $30 weekly maximum as being applicable to the petitioner's claim. The evidence, therefore, did not become prejudicial until the cause reached the County Court, where the decision arrived at placed considerable reliance upon it. The error thus underlies not the original finding but the disposition made by the County Court on appeal.

Having determined the testimony of the legislator was improperly admitted and that the partial permanent disability should have been calculated on the $30 a week basis, the judgment of the County Court is reversed and the award made by the Division of Workmen's Compensation is confirmed.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, WACHENFELD, BURLING and ACKERSON—5.

*For affirmance*—Justice OLIPHANT—1.