## In re YUNG SING HEE.

*(Circuit Court, D. Oregon.   October 10, 1888.)*

1. CHINESE—CHILDREN BORN IN UNITED STATES—CITIZENSHIP.
   A person born in the United States of Chinese parents is, by the rule of the common law, and by force of the fourteenth amendment, a citizen of the United States, and, when restrained of his or her liberty of locomotion therein, may be delivered therefrom, on *habeas corpus*, by the proper national court. *Ex parte Chin King*, 35 Fed. Rep. 354, affirmed.

2. SAME—EXCLUSION ACTS—CONSTRUCTION.
   Neither of the exclusion acts of 1882, 1884, or 1888 purport to exclude from the United States the descendants of Chinese, born within the jurisdiction thereof.

3. CONSTITUTIONAL LAW—BILLS OF ATTAINDER—BANISHMENT.
   A legislative act which undertakes to inflict the punishment of banishment or exile from the United States on a citizen thereof, for any cause or no cause, or because of his race or color, is a bill of attainder within the prohibition of the constitution, and therefore void.

*(Syllabus by the Court.)*

Petition for Writ of *Habeas Corpus.*
*Paul R. Deady*, for petitioner.
*Lewis L. McArthur*, for the United States.

DEADY, J.   The writ was allowed in this case on October 8, 1888, and the hearing took place on the 10th of the same month.

The petition of Yung Sing Hee states that she was born in San Francisco on January 15, 1866, and is a citizen of the United States; that she is restrained of her liberty by John R. Hill, the master of the steamship Danube, on which she took passage from Vancouver, B. C., for Portland, Or., on October 6, 1888; that the collector of customs of this

port refuses to allow her to be landed from said vessel on the ground that she is a Chinese woman, without a return certificate, and that, under the recent exclusion act, her landing is prohibited under any circumstances.

The return of the master to the writ admits the fact stated in the petition as to the custody of the petitioner.

On the hearing the United States district attorney intervened on behalf of the United States, and contested the allegation that the petitioner is a citizen of the same, and entitled to land therein. On the hearing it was satisfactorily shown that Yong Soy Yat is a Chinese merchant of this city, where he has resided seven or eight years, as a member of the firm of Tay Chung Lung. That for the 19 years prior to coming here he lived in San Francisco, where he kept a store, and about 1863 was married to Ka Ho, a Chinese woman, at 729 Sacramento street, by whom he had two children, a boy and a girl; the former being born in 1864, and the latter in 1865. That about eight years ago the mother and the two children went to China on the steamer Oceanic, where the former died not long since, and the boy remains with his parental grandfather, at school.

The petitioner is this girl. She came from China on the Canadian Pacific steam-ship to Victoria, a short time since, and from there here on the Danube, as stated in the petition.

The testimony on which these facts are found, although given by Chinese persons, is consistent, reasonable, and convincing. It is probably much more entitled to credit than that on which hundreds of Europeans are every day admitted to become citizens of the United States.

The father was directly corroborated in the main by the testimony of two Chinese merchants of this city, who lived near him, and knew him, and his family, in San Francisco, from about the time of his marriage until the departure of the latter for China; and a rigid cross-examination failed to impair in the least the probability of their statements, or to cast a shadow of suspicion on their honesty.

On this state of facts, both by the common law and the fourteenth amendment, the petitioner is an American citizen, and is entitled to come and go within the United States as any other such citizen. She was born within or subject to the jurisdiction of the United States, and is therefore a citizen thereof. See *Ex parte Chin King*, 35 Fed. Rep. 354, (lately decided in this court;) *In re Look Tin Sing*, 10 Sawy. 353, 21 Fed. Rep. 905.

This being so, she is not within the purview of any of the restriction acts, which do not apply to American citizens of Chinese descent, any more than to those of European descent.

The act of 1882 (22 St. 58) relates exclusively to "Chinese laborers," whether "skilled or unskilled;" and so does the act of 1884 (23 St. 118.) Section 15 of the latter act declares that it "shall apply to all subjects of China, and Chinese, whether subjects of China or any other foreign power." This clause was doubtless inserted to bring the Chinese residents of the British colony Hong Kong within the purview of the act;.

but it also, by a necessary implication, limits its operation to Chinese who are subjects of China or some foreign power, not including such as are citizens of the United States.

The recent act of October 1, 1888, purports to be a supplement to that of 1882, and is confined in terms to "Chinese laborers." As to them, it changes the law so as to prevent, if literally construed, the return of a Chinese laborer to the United States under any circumstances; not even when he left the country on the faith of a treaty with this government, and its certificate, giving him the right to return, and is within the sight of the American shore, on his way back, when the act takes effect.

So harsh and unjust a measure as this concerning the intercourse between friendly nations maintaining diplomatic relations is something unprecedented in this age of the world, and can only be accounted for by the fact that a presidential election is pending, in which each political party is trying to outbid the other for the "sand lot" vote of the Pacific coast, and particularly for that of San Francisco.

Neither is the petitioner a laborer. Indeed, I suppose no Chinese woman is a "laborer" within the meaning of the statute. This one, at least, does not belong to that class. She is the daughter of a merchant, and the testimony is that she does not work at anything but sewing, and not at that for a living, but only for her own purposes. But still, were she not a citizen of the United States, and although she is not a "laborer," she would not be entitled to land, except on the certificate of her own government as to her identity and occupation or profession. 23 St. 116.

However, if the exclusion act is intended to apply to citizens of the United States of Chinese descent, it is so far beyond the power of congress to enact, and therefore unconstitutional and void. The constitution declares, (article 1, § 9,) "No bill of attainder or ex post facto law shall be passed."

A bill of attainder is a special act of the legislature, which inflicts punishment without a judicial trial. If the punishment is less than death, the act is called a "bill of pains and penalties." Cummings v. Missouri, 4 Wall 332. The phrase "bill of attainder," as used in the constitution, includes bills of pains and penalties. Fletcher v. Peck, 6 Cranch, 138.

Banishment or exile is a recognized mode of punishment. Rap. & L. Law Dict. "Banishment." The bill against the Earl of Clarendon, passed in the reign of Charles II., enacted that the earl should suffer perpetual exile, and be forever banished from the realm. Hume's History of England.

A legislative act which undertakes to inflict the punishment of banishment or exile from the United States on a citizen thereof, and thereby deprive him of the right to live in the country, for any cause or no cause, or because of his race or color, is a bill of attainder, within the clause of the constitution of the United States, prohibiting the passage of such bills, and is therefore void.

"Bills of this sort," says Mr. Justice Story, "have been most usually passed in England in times of rebellion or gross subserviency to the crown, or of violent political excitements; periods, in which all nations are most liable (as well the free as the enslaved) to forget their duties, and to trample upon the rights and liberties of others." Comm. § 1344.

"In these cases," says Mr. Justice FIELD, "the legislative body, in addition to its legitimate functions, exercises the powers and office of a judge; it assumes, in the language of the text-books, judicial magistracy; it pronounces upon the guilt of the party, without any of the forms or safeguards of trial; it determines the sufficiency of the proofs produced, whether conformable to the rules of evidence or otherwise; and it fixes the degree of punishment in accordance with its own notions of the enormity of the offense." *Cummings* v. *Missouri*, 4 Wall. 323.

The petitioner is entitled to her discharge, and it is so ordered.