PROGRESSIVE LIFE INSURANCE COMPANY *v.* DEAN.

4-4373

Opinion delivered October 12, 1936.

*Moore & Burke, E. M. Arnold* and *Duty & Duty*, for appellant.

*W. G. Dinning,* for appellee.

HUMPHREYS, J.   This is an appeal from a judgment for $300 with a penalty of 12 per cent. and an attorney's fee in favor of appellee, rendered in the circuit court of Phillips county, against appellant, on an insurance policy it issued on the life of C. D. Ward on the 16th day of February, 1933, in which appellee, Ward's sister, was named as the beneficiary.

The record reflects that C. D. Ward, the insured, was convicted of the crime of rape in the state of Missouri, and on the 19th day of August, was executed for the crime.

The record also reflects a sharp conflict in the testimony as to whether the premiums on the policy of insurance were paid as they matured, or within the grace period.

The testimony introduced by appellant tended to show that default was made in the payment of the premium due July 1, 1933, and that, on application, reinstatement was made on August 26, 1933; that the policy lapsed again for the nonpayment of the October, 1933,

premium, but was reinstated on application on November 28, 1933; also that the policy lapsed for nonpayment of the January, 1935, premium, and that it was not reinstated after lapsing.

The testimony introduced by appellee tended to show that the policy never lapsed for failure to pay any of the premiums during the life of C. D. Ward and that same was in force and effect when Ward was executed for the crime he committed in Missouri.

The issues of fact arising out of the conflicting testimony were submited to the jury under correct instructions and were resolved against appellant. We cannot invade the exclusive province of the jury to determine issues arising out of disputed facts to pass upon the credibility of the several witnesses or the weight to be given to the testimony of each. We look to the record only to ascertain whether there is any substantial evidence to sustain the verdict. There is ample evidence in the instant case to sustain the verdict and consequent judgment.

The only remaining question to determine on this appeal is whether the public policy of this state will forbid a recovery against an insurance company where the insured has been legally executed for a crime. There is no provision in the policy exempting appellant from liability to the beneficiary in case the insured commits a crime for which he was executed. In the case of *Hugh Collins, Exr., etc., of Robert Kilpatric, Deceased* v. *Metropolitan Life Insurance Company*, 232 Ill. 37, 83 N. E. 542, 14 L. R. A. (N. S.) 356, 122 Am. St. Rep. 54, 13 Ann. Cas. 129, it was decided (quoting syllabus 1), that: ''The personal representative of an insured is not precluded from enforcing payment of his policy by the fact that insured was executed for crime, where the Constitution declares that no conviction shall work a corruption of blood or forfeiture of estate, and the statutes make no exception in the case in the rules of descent and distribution.''

In the case of *Fields* v. *Metropolitan Insurance Company*, 147 Tenn. 464, 249 S. W. 798, 36 A. L. R. 1250, it was decided (quoting syllabus), that: ''In view of

Const., art. 1, § 12, prohibiting corruption of blood or forfeiture of estate and deodands, which established the public policy of the state as opposed to forfeitures for conviction for crimes, it is not contrary to public policy for a life insurance company to pay to the beneficiary the amount of the policy upon the life of one who had been executed by the state for murder."

In both cases referred to, life insurance contracts are treated as property (choses in action) and correctly so. In both these cases it is decided that one who is executed for crime does not forfeit any of his property rights. He may make such disposition of his property before he is executed as he pleases, and if he does not dispose of his property in any manner known to the law prior to his death, the statute of descents and distributions will dispose of it for him just as it would the property of any one else who died intestate. The reason assigned for the rule announced is that the constitution of the state declares a conviction for crime shall not work a corruption of the blood or forfeiture of estate. In both cases notice is taken of the two cases decided by the Supreme Court of the United States and relied upon by appellant, holding that it is contrary to public policy for a beneficiary to recover on an insurance policy if the insured was legally executed for a crime. The cases of the United States Supreme Court cited by appellant are styled as follows: *Burt* v. *Union Central Life Ins. Co.*, 187 U. S. 362, 23 S. Ct. 139, 47 L. Ed. 216, and *Northwestern Mutual Life Ins. Co.* v. *McCue*, 223 U. S. 234, 32 S. Ct. 220; 56 L. Ed. 419, 38 L. R. A. (N. S.) 57.

In the Illinois and Tennessee cases referred to above, mention is made of the fact that the Supreme Court of the United States did not take into account the constitutional provisions in our nation and states prohibiting forfeiture of estate of one attainted with crime, but, on the contrary, followed the opinion of the Lord Chancellor for the House of Lords, delivered July 9, 1830, in the case of *Amicable Society* v. *Bourland,* 4 Bligh (N. S.) 194, 6 Eng. Reprint 630. At the time the Lord Chancellor rendered the opinion, "at common law, all the property, real and personal, if one attainted was forfeited, and his

blood was so corrupted that nothing could pass by inheritance to, from, or through him. Thus, the wife, children, and collateral relations of the attainted person suffered with him.''

The Constitution of the United States and this state has removed us from these harsh rules of the common law, and they should not be enforced in this free country on the ground of public policy.

Article 1, § 10, of the Constitution of the United States, is as follows: ''No state * * * shall pass any bill of attainder.''

Article 2, § 17, of the Constitution of Arkansas, is as follows: ''No bill of attainder * * * shall ever be passed.''

It has been wisely said: ''The public policy of a State has to be sought for in its Constitution, legislative enactments, and judicial decisions.''

Of course, in arriving at the public policy of a State, legislative enactments must yield to constitutional provisions, and judicial decisions must recognize and yield to constitutional provisions and legislative enactments.

Our Constitution has declared the public policy applicable to the case at bar, and we must respect it as the first and highest declaration of public policy.

No error appearing, the judgment is affirmed.