**SIMMONS v. UNITED STATES.**
No. 3882.

United States District Court
Middle District Pennsylvania.
April 7, 1954.

644

Caldwell, Fox & Stoner, Harrisburg, Pa., for plaintiff.

Arthur A. Maguire, U. S. Atty., Wilkes-Barre, Pa., for defendant.

MURPHY, District Judge.

Defendant moves for summary judgment in an action wherein plaintiff [1] beneficiary seeks to recover on a National Service Life Insurance Policy, 38 U.S. C.A. § 801 et seq. Death of the insured was inflicted by the Commonwealth of Pennsylvania as a lawful punishment for the crime [2] of murder. Section 612 of the Act, 38 U.S.C.A. § 812, provides,[3] "* * * No insurance shall be payable for death inflicted as a lawful punishment for crime or for military or naval offense, except when inflicted by an enemy of the United States; * *." Absent any such statutory or contractual provision, Burt v. Union Cent. Life Ins. Co., 1902, 187 U.S. 362, 23 S.Ct. 139, 47 L.Ed. 216, and Northwestern Mut.

1. Mother of insured.

2. Committed after his discharge from military service.

3. "Any person guilty of mutiny, treason, spying, or desertion, or who, because of conscientious objections, refuses to perform service in the land or naval forces of the United States or refuses to wear the uniform of such force, shall forfeit all rights to insurance under this subchapter. No insurance shall be payable for death inflicted as a lawful punishment for crime or for military or naval offense, except when inflicted by an enemy of the United States; but the cash surrender value, if any, of such insurance on the date of such death shall be paid to the designated beneficiary, if living, or otherwise to the beneficiary or beneficiaries within the permitted class in accordance with the order specified in § 802 (h) (3) of this title. Oct. 8, 1940, c.

757, Title VI, Part I, § 612, 54 Stat. 1013." And see 38 C.F.R. § 10.3461 (1941) Supp., "Provided, That such cash surrender value shall not be paid in cases in which all rights to insurance have been forfeited pursuant to the provisions of the first sentence of this section."

4. Following the reasoning of the Lord Chancellor in The Amicable Society v. Bolland (1830) 4 Bligh N.S. 194, 211, 2 Dow and c. 1, 2 Clark and Finelly 1, 3, English Reports Full Print, Book 6, Bligh N.S. 10, 11; such a risk was not contemplated, it would remove a restraint against crime; good faith required that assured do nothing wrongful to accelerate maturity of the policy. The Supreme Court added the danger of suppression of evidence, and that it amounted to wagering, citing Ritter v. Mutual Life Ins. Co., 169 U.S. 139, 18 S.Ct. 300, 42 L.Ed. 693; New York Mut. Life Ins. Co. v. Arm-

Life Ins. Co. v. McCue, 1912, 223 U.S. 234, 32 S.Ct. 220, 56 L.Ed. 419, 38 L.R.A.,N.S., 57,[4] stated that an ordinary life policy of commercial insurance did not and could not, impliedly or expressly, validly insure against death by legal execution for crime, on the ground of public policy. Further that, "These cases must be accepted as expressing the views of this court as to the public policy which must determine the validity of insurance policies * * *." Id., 223 U.S. at page 246, 32 S.Ct. at page 221. "* * * and its ruling must prevail in the Federal courts * * *."[5] Id., 223 U.S. at page 249, 32 S.Ct. at page 223. Unless there is some reason to the contrary; because of the express exclusion of the risk and public policy, defendant's motion must be granted.

Plaintiff contends (1) that the rule as to public policy should not be extended to preclude recovery by an innocent beneficiary; and cites Prudential Ins. Co. of America v. Petril, D.C.E.D. Pa.1942, 43 F.Supp. 768, which reached that result under Pennsylvania law, but see Hopkins v. Northwestern Life Assur. Co., C.C.E.D.Pa.1899, 94 F. 729, at page 731, "The fact that the beneficiary is some other person than the insured * * * cannot enlarge the scope of the contract."[6]

---

strong, 117 U.S. 591, 600, 6 S.Ct. 877, 29 L.Ed. 997.

Accord: Collins v. Metropolitan Life Ins. Co., 1905, 27 Pa.Super. 353. Contra: Collins v. Metropolitan Life Ins. Co., 1907, 232 Ill. 37, 83 N.E. 542, 14 L.R.A.,N.S., 356, 122 Am.St.Rep. 54, 13 Ann.Cas. 129.

"The doctrine denying recovery as tending to encourage crime has been applied in the absence of an express exception in the policy, * * * where the assured was legally executed for murder. But an increasing number of modern cases permit recovery under these circumstances on the ground that to deny recovery would be to enforce a punishment other than that prescribed by law, and would violate a public policy manifested in state constitutions and legislation against forfeiture of property for crime." 6 Williston on Contracts, Rev. Ed. § 1750 at pp. 4958, 4959, and see p. 694; 1 Appleman on Insurance, 1941 Ed. § 517, p. 634; 29 Am.Jur., Insurance, § 909, Annotation, 36 A.L.R. 1255, 14 L.R. A.,N.S., 356; 45 C.J.S., Insurance, § 847, p. 927; 6 Couch on Insurance, 1930 Ed. § 1238, Id. Vol. 8, § 2156.

*Typical cases in accord,* see: Scarborough v. American Nat. Ins. Co., 1916, 171 N.C. 353, 88 S.E. 482, L.R.A.1918A, 896, Ann.Cas.1917D, 1181; Millen v. John Hancock Mut. Life Ins. Co., 1938, 300 Mass. 83, 13 N.E.2d 950 at page 951; contra: Fields v. Metropolitan Life Ins. Co., 1923, 147 Tenn. 464, 249 S.W. 798, 36 A.L.R. 1250; Weeks v. New York Life Ins. Co., 1924, 128 S.C. 223, 122 S.E. 586, 35 A.L.R. 1482; American Nat. Ins. Co. v. Coates, 1923, 112 Tex. 267, 246 S.W. 356; Allen v. Diamond, 7 Cir.,

1926, 13 F.2d 579; Progressive Life Ins. Co. v. Dean, 1936, 192 Ark. 1152, 97 S. W.2d 62 (executed for rape).

Some cases say the Bolland decision resulted from the then existing law of forfeiture, but see Beresford v. Royal Ins. Co. Ltd. (1938) A.C. 586, 54 Times L. 789, 2 All English Rep. 602, affirming (1937) 2 K.B. 197, crit. (1939) 24 Corn. L.Q. 447.

5. Not where death results from an ordinary violation of law. Zurich General Accident & Liability Ins. Co. Ltd. v. Flickinger, 4 Cir., 1929, 33 F.2d 853 at page 856, 68 A.L.R. 161, Parker J. Northwestern Mut. Life Ins. Co. v. Johnson, 1920, 254 U.S. 96 at page 100, 41 S.Ct. 47, at page 48, 65 L.Ed. 155; 57 A.L.R. 437 (death by suicide), qualified Ritter v. Mutual Life Ins. Co., supra, 169 U.S. 139, 18 S.Ct. 300, holding that "public policy with regard to such contracts is a matter for the states to decide" (see and cf. 38 C.F.R. Vol. 10, § 10.3126) and states that the incontestable clause had a laudable purpose. Mr. Justice Holmes distinguished Burt and McCue as cases where there were tacit exclusions of the risk whereas in the Johnson case there was an express undertaking. In our judgment neither the Johnson case nor Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, affect the rule in federal courts, where, as here, the question is not controlled by state law. As to the Johnson case, see New Amsterdam Casualty Co. v. Jones, 6 Cir., 1943, 135 F.2d 191 at page 194.

6. See e.g.: Mutual Life Ins. Co., etc., v. Guller, 1918, 68 Ind.App. 544, 119 N.E. 173 at pages 175–177, theory of a vested

(2) Art. 1, § 9, cl. 3, of the United States Constitution, provides, "No Bill of Attainder * * * shall be passed"; 18 U.S.C.A. § 3563, "No conviction or judgment shall work corruption of blood or any forfeiture of estate."

(3) Absent a specific provision "crime", in its context, does not include a violation of a state law; at best the term is ambiguous and a liberal construction requires an interpretation in favor of the insured and against the insurer. United States v. Zazove, 1948, 334 U.S. 602 at page 610, 68 S.Ct. 1284, 92 L.Ed. 1601; Wissner v. Wissner, 1950, 338 U.S. 655 at page 658, 70 S.Ct. 398, 94 L.Ed. 424; United States v. Patryas, 1938, 303 U.S. 341 at page 343, 58 S.Ct. 551, 82 L.Ed. 883. Of course, this rule cannot be availed of to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties. Flannagan v. Provident Life & Accident Ins. Co., 4 Cir., 1927, 22 F.2d 136, at page 139; Williams v. Union Central Life Ins. Co., 291 U.S. 170, at page 180, 54 S.Ct. 348, 78 L.Ed. 711; U.S. Fidelity & Guaranty Co. v. Guenther, 281 U.S. 34, at page 37, 50 S.Ct. 165, 74 L.Ed. 683.

(4) Accepting premiums after insured was arrested estops defendant from denying liability.

Defendant answers (1) the risk was expressly excluded by clear language; (2) plaintiff's position requires reading words into the statute which Congress did not see fit to include, Maryland Cas. Co. v. United States, 4 Cir., 1946, 155 F.2d 823 at page 826; (3) public policy announced long before passage of the Act precluded assumption thereof; (4) there was therefore no right to be forfeited; (5) absence of any similar prior proceeding suggests the lack of merit in such claim; (6) the history of the legislation and administrative interpretation thereof supports the government's present position.

National Service Life Insurance policies possess the same legal incidents as other government contracts. By the express provisions thereof and as a matter of law the terms of the contract are to be found in the policy itself, the statute under which it was issued, and regulations promulgated thereunder. Lynch v. United States, 1934, 292 U.S. 571, 576, 577, 54 S.Ct. 840, 78 L.Ed. 1434. The validity and construction of such policies and their consequences on the rights and obligations of the parties present questions of federal law and are not controlled by the law of any state. Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838; United States v. Allegheny County, 1944, 322 U.S. 174, 183, 64 S.Ct. 908, 88 L.Ed. 1209; Woodward v. United States, 8 Cir., 167 F.2d 774, at pages 778–779; Pack v. United States, 9 Cir., 1949, 176 F.2d 770, at page 771. Similarly the interpretation of words used therein is a federal question, N. L. R. B. v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170, not to be determined by local law unless a particular statute is construed so as to have the meaning of a particular term depend upon applicable state law. Lembcke v. United States, 2 Cir., 1950, 181 F.2d 703, at page 706.

Speaking of the National Service Life Insurance Act, the Supreme Court stated: "* * * the statute is an expression of legislative intent rather than the embodiment of an agreement between Congress and the insured person. Only the intent of Congress, which in this case is the insurer, need be ascertained to fix the meaning of the statutory terms; the layman understanding of the policy holder does not have the relevance here that it has in the construction of a commercial contract." United States v. Zazove, supra, 334 U.S. at page 611, 68 S.Ct. at page 1288. Further, quoting Id.; 334 U.S. at pages 616–617, 68 S.Ct. at page 1291, from Pine Hill Coal Co. v. United

interest in the beneficiary, but see 38 U. S.C.A. § 802(g) and Knoche v. Mutual

Life Ins. Co. of N. Y., 317 Pa. 370–372, 176 A. 230.

States, 1922, 259 U.S. 191, at page 196, 42 S.Ct. 482, 66 L.Ed. 894, " 'A liability in any case is not to be imposed upon a Government without clear words' " [7].

■ Where there are no statutory provisions or public policy to the contrary, an insurer may select the risk it is willing to assume and make such exception thereto as it sees fit. It may exclude or limit liability for death of the insured resulting from legal execution, and such provisions will be enforced by the courts.[8]

■ Following the Bolland case, an exception of the risk in question was placed in many policies.[9] Congress alone can prescribe the terms on which a claim for benefits may be recovered, and it is not within the province of the court to extend a clear expression of those terms. Cannon v. United States, D.C. E.D.Pa.1941, 45 F.Supp. 106 at page 108, affirmed Per Curiam, 3 Cir., 1942, 128 F.2d 452. In permitting a veteran to apply for an insurance policy, the National Service Life Insurance Act limited the risk the government was willing to assume. We see no constitutional limitation on the power of Congress to make provision as to the manner the government shall contract with holders of such insurance. Pack v. United States, supra, 176 F.2d 770, and see United States v. Patryas, supra, 303 U.S. at page 345, 58 S.Ct. 551. The act is constitutional. Wissner v. Wissner, supra, 338 U.S. at pages 660, 661, 70 S.Ct. 398.

Section 612 contains three provisions:[10] Those guilty of certain offenses or conduct shall forfeit all rights to insurance;[11] the second as spelled out

7. See Price v. United States, 174 U.S. 373, at page 375, 19 S.Ct. 765, 766, 43 L. Ed. 1011, "It is an axiom of our jurisprudence. The government is not liable to suit unless it consents thereto, and its liability in suit cannot be extended beyond the plain language of the statute authorizing it." "* * * the language and import of the Act is too doubtful and uncertain to justify the creation of a liability against the government." Maryland Casualty Co. v. United States, D.C., 63 F.Supp. 629, at page 632. "* * * it is also well established that suit may not be maintained against the United States in any case not clearly within the terms of the statute by which it consents to be sued." United States v. Michel, 282 U.S. 656, 659, 51 S.Ct. 284, 285, 75 L.Ed. 598; McCrae v. Johnson, D.C.D.Md., 84 F.Supp. 220, at pages 221, 222, and see opinion by Chief Justice Marshall in United States v. Clarke, 8 Pet. 436 at page 443, 33 U.S. 436, at page 443, 8 L.Ed. 1001; United States v. Fitch, 10 Cir., 185 F.2d 471, at page 474; Rowan v. United States, D.C., 115 F.Supp. 503.

8. 1 Appleman, Id. op. cit. supra, § 517; Diamond v. New York Life Ins. Co., 7 Cir., 1931, 50 F.2d 884, at page 887; Doubrly v. Carolina Life Ins. Co., 1938, 58 Ga.App. 178, 198 S.E. 76; 29 Am.Jur. Insurance, §§ 905, 906, 909; 45 C.J.S., Insurance, § 847(b), pp. 927–929; National Union Fire Ins. Co. v. Frisco Frolics Musical Comedy Co., 7 Cir., 1933, 65 F.2d 928, at page 929; Hall v. Mutual Reserve Fund Life Ass'n, 19 Pa.Super. 31, at page 34; Bigelow v. Berkshire Life Ins. Co., 1876, 93 U.S. 284, at page 286, 23 L.Ed. 918; 6 Williston op. cit., supra at page 4958. And see Miller v. Illinois Bankers' Life Ass'n, 138 Ark. 442, 212 S.W. 310, 7 A.L.R. 378; 8 Couch, op. cit, supra, § 1238; Weeks v. New York Life Ins. Co., 122 S.E. 586, 35 A.L.R. 1482; Zurich General Accident & Life Ins. Co. v. Flickinger, 33 F.2d 853; Flannagan v. Provident Life & Accident Ins. Co., 22 F.2d 136, all supra.

9. See e. g., Ritter v. Mutual Life Ins. Co., supra, 169 U.S. at page 158, 18 S. Ct. 139, and English cases cited at pp. 155 and 160; Hartman v. Keystone Ins. Co., 21 Pa. 466, at page 479; McCue v. Northwestern Mut. Life Ins. Co., 1908, 4 Cir., 167 F. 435, at page 437.

10. The legislative history shows no discussion of any provisions of the Act enacted as an amendment to the Second Revenue Act of 1940, 26 U.S.C.A.Int.Rev.Acts, page 21. See United States v. Henning, 344 U.S. 66, footnote at page 73, 73 S.Ct. 114, 97 L.Ed. 101.

11. For a history of the provisions, see October 6, 1917, c. 105, § 2, 40 Stat. 398 at 405 adding § 300 (compensation only); amended by adding § 29 spelling out of-

648

supra does not speak in terms of forfeiture but in those of exclusion of risk;[12] finally, as to cash surrender value on policies covered by the second provision only.[13]

■ The offenses spelled out in the first sentence are ordinarily though not necessarily[14] such as occurred in the military service. As noted, together with the provisions of § 29 of the War Risk Insurance Act, the provision in controversy was first applied to insurance March 4, 1925, a time of peace, when the vast majority of those holding National Service Life Insurance policies were no longer in the service. The word crime was therefore obviously intended to refer to civil crimes as distinguished from military or naval offenses.

■ We assume that at the time the Act was passed Congress knew of the public policy declared by the Supreme Court and was familiar with the practice of commercial life insurance companies in excluding the risk in question. See and cf. United States v. Henning,

supra, 344 U.S. at pages 71, 72, 75, 76, 73 S.Ct. 114; United States v. Zazove, supra, 334 U.S. at pages 617, 623, 68 S.Ct. 1284; Exploration Co., Ltd. v. United States, 1918, 247 U.S. 435 at page 449, 38 S.Ct. 571, 62 L.Ed. 1200.[15]

■ "The public policy of the government is to be found in its statutes, and, when they have not directly spoken, then in the decisions of the courts and the constant practice of the government officials; but when the lawmaking power speaks upon a particular subject, over which it has constitutional power to legislate, public policy in such a case is what the statute enacts." United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 340, 17 S.Ct. 540, 559, 41 L.Ed. 1007, and see Twin City Pipe Line Co. v. Harding Glass Co., 283 U.S. 353, 357, 51 S.Ct. 476, 478, 75 L.Ed. 1112, 83 A.L.R. 1168, "Primarily it is for the lawmakers to determine the public policy * *." Only in clear cases may a contract be declared illegal on that ground. Steele v. Drummond, 275 U.S. 199, 205, 48 S.Ct. 53, 72 L.Ed. 238.

fenses, June 25, 1918, c. 104, § 2, 40 Stat. 609 (compensation and insurance); August 9, 1921, c. 57, 42 Stat. 147, § 15 at 152; March 4, 1923, c. 291, § 1, 42 Stat. 1521, as amended, 38 U.S.C.A. § 447, June 7, 1924, c. 320, 43 Stat. 607, § 23 at 613; March 4, 1925, c. 553, § 3, 43 Stat. 1303 (Act 1930 not pertinent); 38 U.S.C.A. § 693g, June 22, 1944, c. 268, Title I, § 300, 58 Stat. 286 (other than insurance); 38 U.S.C.A. § 728, July 13, 1943, c. 233, § 4, 57 Stat. 555.

12. See Note 11 supra, Act 1917 Id. at 407, adding § 308 to Act of Sept. 2, 1914, Act 1923 Id. § 6 at 1525, 38 U.S.C.A. § 447, Act 1924 Id. § 208 at 622; Act 1925 Id. amending § 23 of Act 1924 Id., inserting inter alia the provision in question covering compensation and insurance. § 208 was turned to other purposes.

See and cf. 38 U.S.C.A. § 857, April 25, 1951, c. 39, § 8, 65 Stat. 35, Vol. 2, 1951, Code Congressional Service, pp. 1387–1388, 1393, 1408.

13. Here in a Five Year Level Term Policy, the provision would not apply.

14. They may be both. Ex parte Mason, 105 U.S. 696, at page 700, 26 L.Ed. 1213;

Kahn v. Anderson, 255 U.S. 1 at pages 8–9, 41 S.Ct. 224, 65 L.Ed. 469; Caldwell v. Parker, 252 U.S. 376 at page 386, 40 S. Ct. 388, 64 L.Ed. 621; Coleman v. State of Tennessee, 97 U.S. 509, at page 513, 514, 24 L.Ed. 1118; Ex parte Quirin, 317 U.S. 1, at page 43, 63 S.Ct. 2, 87 L.Ed. 3; Ex parte Wilson, 114 U.S. 417 at page 423, 5 S.Ct. 935, 29 L.Ed. 89; Kurtz v. Moffitt, 115 U.S. 487, at page 500, 6 S. Ct. 148, 29 L.Ed. 458; Ex parte Reed, 100 U.S. 13, at pages 20–21, 25 L.Ed. 538; Terry v. United States, D.C., 2 F.Supp. 962.

15. The distinction is clearly pointed out in Administrative Decision No. 562, April 1, 1944, " * * * it is apparent that some of the offenses proscribed by § 612 may be committed in civil as well as military status, while others of § 29 (War Risk Insurance Act) * * * were clearly offenses committed in military service or at least requiring dismissal from or court martial in the military service. * * *"

As to the history and effect of the legislation, see Administrator's Decision No. 534, Oct. 8, 1943, No. 773, Feb. 9, 1948. Statements made therein as to the effect of the offense involved must be understood in their context.

"When a Federal criminal statute uses a term known to the common law and does not define that term, the courts will apply the common-law meaning of the term, unless the context indicates a contrary intent on the part of Congress." Hite v. United States, 10 Cir., 1948, 168 F.2d 973, at page 974, and see United States v. Brandenburg, 3 Cir., 1944, 144 F.2d 656 at page 659, 154 A.L.R. 1160.

"In the absence of a plain indication to the contrary, it will not be assumed that Congress, in enacting a Federal penal statute, intended to make its application dependent on state laws." Hite v. United States, supra, 168 F.2d at page 975; see Jerome v. United States, 318 U.S. 101, 104, 106, 108, 63 S.Ct. 483, 87 L.Ed. 640, but see Lembcke v. United States, supra, 181 F.2d at page 706. However, when § 612 is viewed in its historical setting, considering the public policy announced by the Supreme Court, the terms of the provision itself, there is no indication that Congress intended to set aside the public policy previously declared. On the contrary, it appears they intended to make it a part of statutory law with all its attendant implications. Since "crime" therefore was included without qualification, it was in our judgment the intention of Congress to mean crime of any type and against any sovereignty (except an enemy) providing it is punishable by death.[16]

Apart from the effect of the declaration of public policy before the Act was enacted, certainly in view of the express exclusion of the risk, the constitutional and statutory provisions against forfeiture are not applicable or pertinent.[17] "A forfeiture deprives a man of what he previously possessed, or at least prevents him from acquiring what he has substantially paid for. * * *" 3 Williston, op. cit. supra, § 770, see Id. § 769. The exclusion is a limitation on the risk assumed and is not a provision for forfeiture. Monahan v. New York Life Ins. Co., D.C., 26 F.Supp. 859, 864. There was no cause of action to be forfeited. Diamond v. New York Life Ins. Co., 7 Cir., 1931, 50 F.2d 884, 887; Miller v. Illinois Bankers Life Ass'n, supra, 212 S.W. 310, 7 A.L.R. 378. It is not a question of avoiding a policy but that the policy did not cover the risk of death at the hands of justice. Hopkins v. Northwestern Life Assur. Co., C.C.E.D.Pa.1899, 94 F. 729, at page 731; Scarborough v. American National Ins. Co., supra, 88 S.E. at pages 483–484; McCue v. Northwestern Mutual Life Ins. Co., 4 Cir., 167 F. 435; Smith v. Metropolitan Life Ins. Co., 125 Misc. 670, 211 N.Y.S. 755, at pages 762–763.

Although National Service Life Insurance policies as contracts create certain vested rights, Lynch v. United States, supra, 292 U.S. at page 577, 54 S.Ct. 840, in the absence of a cause of action arising from the contract there could be no vested interest. White v. United States, 270 U.S. 175, at page 180, 46 S.Ct. 274, 70 L.Ed. 530, and see Note 6 supra.

The liability imposed by the policy is purely contractual. That instrument is the measure of the rights of everybody under it. Spicer v. New York Life Ins. Co., 5 Cir., 1920, 268 F. 500, at page 501. As it does not

---

16. "* * * what we do * * * is to project ourselves, as best we can, into the position of those who uttered the words, and to impute to them how they would have dealt with the concrete occasion." United States v. Henning, supra, 344 U.S. at page 79, 73 S.Ct. 114, 121, quoting from United States v. Klinger, 2 Cir., 199 F.2d 645, at page 648.

17. As to forfeiture, see and cf. United States v. Lovett, 1946, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252, and cf. Id., 328 U.S. at page 318 et seq., 66 S.Ct. 1080; Cummings v. State of Missouri, 4 Wall. 277, 71 U.S. 277, 18 L.Ed. 356; Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366; cf. Id., 71 U.S. at page 374; United States v. General Electric Co., D.C., 80 F.Supp. 989, at 1004; In re Yung Sing Hee, C.C., 36 F. 437.

cover death by the hand of the law there cannot be recovery. Northwestern Mutual Life Ins. Co. v. McCue, supra, 223 U.S. at page 252, 32 S.Ct. 220.

38 U.S.C.A. § 802(w) incorporates by reference the provisions of § 812 as to incontestability. And see 38 U.S.C.A. § 518, 38 C.F.R., Vol. 10, § 10.3045; United States v. Patryas, supra, 303 U.S. 341, 58 S.Ct. 551. "The incontestable clause is intended not to enlarge the scope of the insurer's promise so as to include liability for death due to causes which are excluded either by express terms of the policy or by implication of law, but to make certain the enforcibility of the promise as set out in the policy." 3 Williston, op. cit. supra, § 811 at 2280, 2281; Perilstein v. Prudential Ins. Co. of America, 1943, 345 Pa. 604, 29 A.2d 487, and see Equitable Life Assur. Soc. v. Deem, 4 Cir., 1937, 91 F.2d 569, at page 572; Neuhard v. United States, D.C.M.D.Pa.1949, 83 F.Supp. 911. Contra, Modern Woodmen of America v. Kehoe, 1946, 199 Miss. 754, 25 So.2d 463, at page 466.

Acceptance of premiums did not create an estoppel. Birmingham v. United States, 8 Cir., 1925, 4 F.2d 508. See Karas v. United States, D.C.M.D. Pa.1954, 118 F.Supp. 446, and cases cited.

As to the effect of the amendment of August 1, 1946, as to beneficiaries, see § 602(g) of the Act, 38 U.S.C.A. § 802(g), 38 C.F.R. § 10.3446 (1946 Supp.), § 513 American Law of Veterans, and see Wilson v. Kyle, 5 Cir., 1951, 186 F.2d 621; we find nothing therein to aid plaintiff's position.

There is here therefore no ambiguity requiring a liberal construction. It is not only reasonable but necessary that the parties should contract as they did; having so contracted, the contract must be given full force and effect. See Flannagan v. Provident Life & Accident Ins. Co., supra, 22 F.2d at page 139. This being so, judgment must be given for the defendant.