September 9, 1977

## 78-84   MEMORANDUM FOR THE COUNSEL
## TO THE PRESIDENT

### Presidential Authority—Slovik Case—
### Constitutional Law—Posthumous Pardons—
### Review of Sentence (10 U.S.C. § 1552)

You have asked for our opinion regarding the President's authority to act in the case of the late Eddie D. Slovik, who was sentenced to death by a court-martial for desertion and subsequently executed on January 31, 1945. For reasons stated hereafter, we conclude that: (1) the President has no power to review or overturn the August 12, 1977, decision of the Secretary of the Army; and (2) even assuming that the President might issue a posthumous pardon, its issuance would not remove the disability imposed by statute on his widow, Antoinette Slovik, receiving the proceeds of the life insurance that she seeks to collect.

### I.   Background

Slovik left a widow, who, until recently, apparently made no attempt to collect on the National Service Life Insurance (NSLI) policy of $10,000 that had been in force on Mr. Slovik during his brief military service.[1]

The disbursement of NSLI benefits is entrusted by statute to the Veterans' Administration. *See* 38 U.S.C. § 701 *et seq.* Under 38 U.S.C. § 711:

> Any person guilty of *mutiny, treason, spying,* or *desertion,* or who, because of conscientious objections, refuses to perform service in the Armed Forces . . . shall forfeit all rights to [NSLI]. No insurance shall be payable for death inflicted as a lawful punishment for crime or for military . . . offense . . . .

Mrs. Slovik, apparently anticipating that the VA would deny a claim by her because of § 711,[2] filed an application with the Army Board for Correction of

---

[1]The allotment from Mr. Slovik's pay that paid for this insurance was discontinued on December 31, 1944, one month prior to his execution.

[2]Mrs. Slovik also asked the Board to assist in having Mr. Slovik's remains removed from their present burial site in an "unmarked dishonored place in France, to a more suitable resting place."

(Continued)

Military Records (Board), advancing several arguments as to why his military record should be "corrected" in such a way that § 711 would no longer be a bar. The Board, after proceedings held on June 15 and 29, 1977, at which Mrs. Slovik was represented by counsel, recommended to the Secretary of the Army that Mrs. Slovik's application be denied. On August 12, 1977, that recommendation was approved and the application was denied by the Secretary of the Army.

## II.   The President's Power of Review

Any review of the Secretary of the Army's decision on the application of Mrs. Slovik is governed in the first instance by 10 U.S.C. § 1552, which authorizes such applications to be entertained and establishes to a limited extent the procedures under which they are to be processed. The more detailed procedures actually employed are, under § 1552, promulgated by the several Service Secretaries after approval by the Secretary of Defense.

Section 1552 does not explicitly grant or deny the President the power to review decisions made by the Service Secretaries or Boards established pursuant to its provisions. It does, however, state explicitly that "a correction under this section is final and conclusive on all officers of the United States." § 1552(a). This language would arguably prevent the President from overturning a decision favorable to an applicant,[3] but it does not address a situation where, as here, the decision of the Board and Secretary has gone against an applicant. Section 1552 does, however, require decisions made on applications to be made "under procedures established by [the several Service Secretaries] and approved by the Secretary of Defense . . . ." We think that, at a minimum, this means that all such decisions are to be made with some semblance of procedural regularity. The Secretary of the Army has adopted procedures to this end. See 32 CFR § 581.3.

Under 32 CFR § 581.3(f)(2) the Secretary of the Army possesses final authority, subject only to judicial review, to grant or deny an application for correction. As pointed out in a recent case, the Secretary could, by regulation having the approval of the Secretary of Defense, give final decisionmaking authority to the Board itself, thereby preventing even the Secretary of the Army from reviewing the decision of the Board so long as the regulation was in force. See, Biddle v. United States, 186 Ct. Cl. 87 (1968). In addition, a number of cases have indicated that the Secretary himself may not reverse a "decision" of the Board where the Board's findings are supported by the record. See, e.g., Weiss v. United States, 408 F. (2d) 416, 422 (Ct. Cl. 1969); Nelson v. Miller, 373 F. (2d) 474, 478 (3d Cir. 1967).

---

(Continued)

The Board found this issue to be beyond its jurisdiction, stating that "36 U.S.C. 121 provides the American Battle Monuments Commission with responsibility for maintaining military cemeteries in foreign countries. . . ."

[3]The scant legislative history of the provision indicates that Congress intended to "make the findings of the boards not subject to review by other Government departments." S. Rept. No. 788, 82d Cong., 1st sess. 2 (1951).

In these circumstances, we think that the President lacks the power of review over a decision made by the Secretary of the Army because § 581.3(f)(2) effectively precludes him from doing so.[4] It is a generally accepted principle that courts will review and set aside actions taken by the military not in accord with their own regulations. *See, e.g., Peavy* v. *Warner*, 493 F. (2d) 748, 750 (5th Cir. 1974). Although a departure inuring to the benefit of Mrs. Slovik would probably not be subject to judicial review, we believe that the general principle is fully applicable.[5]

Concluding, as we do, that the President may not exercise review over the *Slovik* case, the question arises whether he might nevertheless request the Secretary of the Army to reconsider his decision or to remand the case to the Board for further consideration. It is certainly arguable that the President's general supervisory power over the execution of the laws under Art. II, § 3, of the Constitution, as well as his power as Commander-in-Chief, would be sufficient to sustain his taking some position in this matter. We do not, however, think that this supervisory power is sufficient to permit him to order reconsideration of the matter so long as 32 CFR § 581.3(f)(2) is effective. We reach this result because such an order would effectively constitute Presidential intrusion into a quasi-adjudicatory procedure different only in degree from his attempting to review the Secretary's decision on the merits.

The President is, of course, free at any time to comment on the merits of decisions made by his subordinates. Whether to do so in a specific situation does not pose a legal question *per se*, but we tend to doubt the propriety of his making any statement on the merits of the Secretary's decision that would in any way compromise possible defense of that decision by this Department in connection with any judicial review that might be sought by Mrs. Slovik. Our review of the case, limited to an analysis of the Board's opinion, indicates to us that its decision could easily withstand judicial review under the narrow scope of review given to courts in these matters.[6] The President would not be precluded from expressing sympathy for Mrs. Slovik's situation, which was expressed by the Board itself.

### III. The Pardon Power

Another source of authority potentially available to the President is the pardon power vested in the President under Art. II, § 2, cl. 1, of the Constitution. In the circumstances of this case, a threshold question arises as

---

[4]We do not address the question whether the Secretary of the Army might amend the governing regulation so as to provide for Presidential review of some or all of these cases.

[5]We note that were the President thought to have the power to review such decisions, a procedure to effect it would most probably have to be established to avoid raising grave questions concerning judicial review. This is so because courts will not review decisions that are thereafter subject to revision by the Executive branch. *See, Chicago & Southern Air Lines, Inc.* v. *Waterman S.S. Corp.*, 333 U.S. 103, 113-14 (1948). An established procedure would have to assure reviewing courts that a decision before them for review was no longer subject to revision by the President.

[6]The articulated standard of review of such matters is for arbitrariness or capriciousness. *See, Weiner* v. *United States*, 148 Ct. Cl. 445 (1960).

to whether the President may issue a pardon posthumously. Because this question has never been resolved judicially and the power has been exercised posthumously only on one occasion (apparently inadvertently), we think it prudent to dispose of the question of its use in this case on a narrower ground.[7] Thus, we turn to the question whether, assuming the President were to pardon Slovik, the effect of that pardon would be to restore to Mrs. Slovik the right to payment of her late husband's insurance policy despite 38 U.S.C. § 711.

Prior Attorneys General have generally taken the position that, while a pardon relieves the offender of all disabilities imposed by way of punishment, it does not relieve an offender of disabilities that attend a conviction. Thus, Acting Attorney General Davis concluded that a statute forbidding the appointment as a naval officer of any person previously dismissed from the naval service by sentence of a court-martial did not impose a punishment on such an officer but rather should be viewed as a qualification for appointment that could not be affected by an exercise of the pardon power. 31 Op. A.G. 225, 226-30 (1918). *See also* 39 Op. A.G. 132, 134-35 (1938); 36 Op. A.G. 193 (1930); 22 Op. A.G. 36 (1898).

Applying the reasoning of these prior opinions to the present case, it is our opinion that § 711, insofar as it prevents the payment of insurance proceeds where the insured was executed pursuant to a criminal sentence[8] does not constitute a punishment. Rather, as copiously detailed in *Simmons* v. *United States*, 120 F. Supp. 641 (D. Pa. 1954), the denial of insurance benefits to persons executed as punishment for crimes represents nothing more than Congress' recognition of a longstanding public policy in commercial insurance of excluding from risks covered by life insurance the risk that the insured will be executed for crime. In *Simmons*, a beneficiary of an NSLI policy sought to recover where the insured had been executed by a State for murder. The court, in our view, correctly described the applicable provision of what is now § 711 as involving a contractual exclusion of risk in recognition of prevailing public policy in this area of the law. We do not think that the pardon power reaches an exclusion or disability that is imposed not as punishment for crime committed but to fulfill a readily identifiable public policy.

Leon Ulman
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[7]Recently, the Deputy Attorney General advised the Counsel to the President that the Department of Justice did not think the President could grant a posthumous pardon. Our own research indicates that there are conflicting internal departmental memoranda on this question and that none can be said to resolve the question definitively.

[8]We do not address the question whether denial of such benefits to a deserter would constitute a punishment because it is unnecessary to do so to dispose of this case.